**Sandra M. SPEER, Plaintiff–Appellant,**

v.

**RAND McNALLY & COMPANY,
a Delaware corporation,
Defendant–Appellee.**

No. 96–4142.

United States Court of Appeals,
Seventh Circuit.

Argued May 15, 1997.

Decided Aug. 27, 1997.

Dennis R. Favaro (argued), Kenneth A. Runes, Susan R. Bauer, Thill & Favaro, Palatine, IL, for Plaintiff–Appellant.

John J. Lynch, Patricia C. Slovak, Brittain, Sledz, Morris & Slovak, Chicago, IL, Gregory J. Utken (argued), Edward Edison Hollis, Baker & Daniels, Indianapolis, IN, for Defendant–Appellee.

Before CUDAHY, MANION, and ROVNER, Circuit Judges.

MANION, Circuit Judge.

In this Title VII case, Sandra Speer claims that her supervisor, Dave Raymond, sexually harassed her, discriminated against her because she was pregnant, and retaliated against her because she spurned his advances and because she was pregnant and took maternity leave. Their employer, Rand McNally & Company, investigated Speer's allegations, and although it found inconclusive evidence, managers spoke with Raymond (who denied the allegations), and any sexually harassing conduct stopped.

Rand McNally reported the result of its investigation to Speer no later than March or April 1994, but Speer waited until late July 1995 to file her sexual harassment claim with the EEOC. The district court concluded that Speer's suit was barred by the statute of limitations for her claims, that comments by the company's investigator did not equitably estop it to assert the limitations period, and that Speer had not alleged facts which constituted a continuing violation of Title VII. Accordingly, the court granted Rand McNally summary judgment. We agree that Speer had the opportunity to bring her allegations in a timely manner but failed to do so. She admits she waived her pregnancy discrimination claims, and she attempted too late to broaden her suit from a hostile work environment claim to one for quid pro quo sexual harassment. Consequently, we affirm the district court's decision.

## I.

Because we review a grant of summary judgment, we view the facts in the light most favorable to the nonmovant, Sandra Speer, and draw all reasonable inferences in her favor. *Bahl v. Royal Indemnity Co.*, 115 F.3d 1283, 1289 (7th Cir.1997).

Rand McNally & Company, which publishes maps, is headquartered in Skokie, Illinois. The company hired Speer in November 1991 on a temporary basis and later offered her a position as an inside sales representative. Speer then moved within inside sales to the map services department. In May 1993, she was promoted to marketing coordinator, where her supervisor was Dave Raymond, who in turn was supervised by Jayne Fenton.

After she became marketing coordinator, Speer contends Raymond sexually harassed her. On two occasions, Raymond allegedly touched Speer. On a business trip to Miami in May or June 1993, Speer claims Raymond grabbed her feet and attempted to kiss her once after they had been drinking in a bar for three to four hours. On an August 1993 business trip to Daytona, Speer asserts that Raymond touched her hand while they drove together in a rental car. Speer argues that after she rejected these advances, Raymond retaliated by verbally abusing her to her face and before her coworkers. Once Raymond forgot to bring certain documents with him to a meeting. Speer alleges that Raymond blamed her for the mistake, disparaging her help. Also, sometime after March 1995, Raymond left a voice-mail message for Speer and another employee in which he is to have stated "I don't know what is going on, but *you two better basically get your act together.*"

Speer contends Raymond also spoke to her in a sexually harassing manner. Raymond allegedly professed his love for Speer and his desire to have sex with her. During the Miami trip, Raymond purportedly said he thought he was falling in love with Speer. Sometime before that trip, Raymond is alleged to have said to Speer that she "looked sexy" and "smelled good" and told her that

he could make her sexually happy and that he wanted to have oral sex with her. Speer also asserts that during the Daytona trip Raymond said he found it difficult to sit next to her. Raymond also allegedly stared at Speer, looking her up and down.

Speer claims also that Raymond made grunting sounds in front of her as other females walked by. Sometime in 1995 a female coworker walked by and Raymond allegedly said "um, I love those dresses on women." During the Miami trip, Speer contends a man walked by with two young women and Raymond commented he "wished he could be like that guy." Speer says that during the Daytona trip she, Raymond, and another coworker were sitting in a bar when some young women went by. Raymond and the coworker said they wished they were rock stars so they "could get females like those girls." Between May and December 1993, Speer alleges that Raymond spoke to her in graphic detail about his sexual relations with his wife.

Speer claims further that Raymond was rude and hostile to her. She says Raymond would walk by her, "huff and puff," and roll his eyes. She also points to an occasion when Raymond allegedly was angry with her about a project on which another employee had worked while Speer was on maternity leave. Twice Speer had panic attacks, and Raymond allegedly did not believe she suffered from anxiety. Speer did not say anything to Raymond about this or any of his comments. She did ask to be transferred. Raymond also suggested a transfer, but it never occurred.

In December 1993, Raymond gave Speer a negative job performance evaluation, which Speer contends resulted from her spurning his advances. After receiving this evaluation, Speer complained about Raymond in writing to Mary Lynn Smedinghoff, the company's vice president of human resources. Smedinghoff told Speer that the company would investigate her complaint, and Smedinghoff and Fenton met with Speer several times. Speer had been in contact with a women's rights organization which advised her to file a charge of discrimination with the Equal Employment Opportunity Commis-sion. She told Smedinghoff she was going to do so. Speer says that Smedinghoff told her "the company would investigate internally, that I should not file with the EEOC because it might take two or three years, and that nothing would be resolved." Fenton and Smedinghoff told Speer that they would investigate the situation thoroughly.

Pursuant to Rand McNally's sexual harassment policy and procedure, Smedinghoff prepared a summary of Speer's complaint. Speer reviewed it, and Smedinghoff and Fenton confronted Raymond with it. Raymond denied the allegations. Raymond also was given the opportunity to prepare a written summary of his version of the events, which he did, and Smedinghoff and Fenton reviewed it with Speer. Both Speer and Raymond gave Fenton and Smedinghoff names of individuals to contact who could corroborate certain facts. Because the company managers concluded the listed individuals could speak only to collateral facts, no witnesses were interviewed. After Smedinghoff and Fenton spoke with Raymond in December 1993, Raymond stopped making comments about Speer's appearance as well as comments about his marriage and having sex with Speer.

Following their investigation, Fenton and Smedinghoff prepared a written summary of what they termed a "she said—he said" situation. Raymond was not disciplined, and he and Speer were not separated. Smedinghoff told Speer that the company could take no further action. Speer admits Smedinghoff reported this information to her no later than March or April 1994. Later Raymond did attend a two-day seminar that included training about sexual harassment.

On July 28, 1995, Speer filed a sexual harassment charge with the EEOC. She finished work at the company two weeks later. The EEOC gave Speer a right-to-sue letter in late August 1995, and she filed this suit on October 30, 1995, alleging violations of Title VII, 42 U.S.C. § 2000(e) *et seq.* (as amended). Speer sought relief on four theories: sexual harassment, retaliation for the sexual harassment, pregnancy discrimination, and retaliation for her pregnancy and maternity leave. Rand McNally moved for summary judgment

on all counts. Then Speer moved for leave to amend her complaint to add a quid pro quo sexual harassment component to her hostile work environment claim, but she later withdrew that motion.

The district court granted the company's summary judgment motion on a variety of grounds: (1) Speer's sexual harassment claim failed as a matter of law because her suit fell outside the three-hundred-day statute of limitations; (2) a "continuing violation" theory did not bring Speer's claims within that statute; (3) Smedinghoff's comments that Speer should not file the EEOC complaint did not equitably estop Rand McNally to assert its statute of limitations defense; (4) Speer could not succeed on her pregnancy discrimination claims because she was not subjected to any adverse employment action; and (5) Speer's retaliation claim fails as a matter of law. In a footnote, the district court concluded it would not have granted a motion for leave to amend Speer's complaint.

■ The district court had jurisdiction over this Title VII case pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4). This court has jurisdiction pursuant to 28 U.S.C. §§ 1291 and 1294. We review the district court's grant of summary judgment under the familiar standards. That review is plenary, *Bahl*, 115 F.3d at 1289, and we uphold a grant of summary judgment if "the pleadings, depositions, answers to the interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Bahl*, 115 F.3d at 1289–90. To avoid summary judgment, the nonmovant must advance "specific facts showing that there is a genuine issue for trial." Fed. R.Civ.P. 56(e). "An issue is genuine if it must be decided at trial because the evidence, seen in a light that favors the nonmovant, would permit a reasonable factfinder to resolve the issue in favor of the nonmovant." *Bahl*, 115 F.3d at 1290 (citing to *Patel v. Allstate Ins. Co.*, 105 F.3d 365, 370 (7th Cir.1997)). A district court's denial of leave to amend a complaint is reviewed for abuse of discretion. *Shanahan v. City of Chicago*, 82 F.3d 776, 781 (7th Cir.1996).

## II.

A. *Waiver of Claims for Pregnancy Discrimination and Retaliation for Pregnancy*

First, Speer concedes that she has waived her claims for pregnancy discrimination and retaliation for pregnancy (counts III and IV of her complaint) as claims set forth in a complaint and presented in a summary judgment motion but not included in an appellate brief. See *Forman v. Richmond Police Dept.*, 104 F.3d 950, 956 n. 1 (7th Cir.1997). Speer's counsel admitted this waiver in Speer's reply brief and at oral argument.

B. *Sexual Harassment and Retaliation Claims*

■ In Illinois, an individual must file an EEOC charge within three hundred days of the alleged harassment. Failure to do so bars litigation over those claims. 42 U.S.C. § 2000e–5(e) (prescribing limitation period for discrimination charges); *Koelsch v. Beltone Elec. Corp.*, 46 F.3d 705, 707 (7th Cir. 1995) (citing *Lorance v. AT & T Technologies, Inc.*, 827 F.2d 163, 165 (7th Cir.1987), aff'd, 490 U.S. 900, 109 S.Ct. 2261, 104 L.Ed.2d 961 (1989)).[1] Because Speer filed her sexual harassment charges with the EEOC on July 28, 1995, any alleged conduct before October 1, 1994 is time-barred and cannot form the basis of a sexual harassment suit.

Speer testified that no alleged physical acts of sexual harassment occurred after August 1993, and that no verbal sexual harassment happened after Fenton and Smedinghoff spoke with Raymond in December 1993. Rand McNally has thus advanced a prima facie case for dismissal of Speer's sexual harassment claims as outside the limitations period.

---

1. Under the applicable federal statute, a plaintiff has 180 days to file his claim, unless the forum state has an administrative agency to which the EEOC defers (hence the phrase "deferral state"). Illinois has such an agency—the Illinois Department of Human Rights, or IDHR—making the time limit 300 days rather than 180 days applicable to this suit.

Speer advances two legal theories to overcome the untimely filing of her EEOC complaint: (1) Smedinghoff's comments, which Speer advances discouraged her from filing her EEOC complaint, equitably estopped Rand McNally to rely on the statute of limitations; and (2) Raymond's behavior constituted a continuing violation of Title VII.

### 1. *Equitable estoppel.*

■ Speer argues that Rand McNally should be equitably estopped to raise the statute of limitations as a bar to her claims because Smedinghoff, on behalf of Rand, told her that the company would investigate internally, that she "should not file with the EEOC because it might take two or three years, and that nothing would be resolved." Speer asserts that these statements discouraged her timely filing, and thus that the statute of limitations should be extended to encompass the conduct at issue.

■ Equitable estoppel requires that "the defendant takes active steps to prevent the plaintiff from suing in time, ... such as by hiding evidence or promising not to plead the statute of limitations." *Thelen v. Marc's Big Boy Corp.*, 64 F.3d 264, 267 (7th Cir.1995) (citing *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 450 (7th Cir.1990)). This court has held that providing "opportunities for internal review is not the sort of deception that supports equitable estoppel." *Lever v. Northwestern Univ.*, 979 F.2d 552, 556 (7th Cir.1992); *see also Soignier v. American Bd. of Plastic Surgery*, 92 F.3d 547, 554 (7th Cir.1996).

Even if Smedinghoff's comments improperly persuaded Speer not to file her EEOC claim in December 1993, the limitations period on her suit began to run once she was notified of the completion of Rand's internal investigation. This occurred at the latest in April 1994, at least fifteen months before Speer filed her claim. Any improprieties in Smedinghoff's conduct were cured by Speer's own failure to file her claim with the EEOC sometime after April 1994, when she received the results (unsatisfactory to her) of the investigation. Speer has not alleged, nor is there evidence, that the company took any steps, active or otherwise, between April

1994 and July 28, 1995 to prevent Speer from filing a claim with the EEOC. Examining the facts from Speer's view, she did not file her EEOC charge within three hundred days of when she acknowledges receiving the result of the company's internal investigation. Her equitable estoppel theory does not change this fact.

### 2. *Continuing violation.*

■ Speer also claims the benefit of a continuing violation theory to extend the statute of limitations. "The continuing violation doctrine allows a plaintiff to get relief for a time-barred act by linking it with an act that is within the limitation period. For purposes of the limitations period, courts treat such a combination as one continuous act that ends within the limitations period." *Selan v. Kiley*, 969 F.2d 560, 564 (7th Cir. 1992). Speer asserts that the link connecting her claims on either side of the statute of limitations accrual date is Raymond himself: "His continued presence as Speer's immediate supervisor fosters the 'serial violation' evidenced by continued instances of discriminatory and retaliatory actions...." "A continuing violation theory requires at least one viable charge within the appropriate limitations period." *EEOC v. Harvey L. Walner & Assoc.*, 91 F.3d 963, 969 (7th Cir.1996) (citations omitted). Speer claims that her continued complaints up to and including a talk in June 1995 with Fenton, Raymond's supervisor, serve as an anchor to bring her pre-october 1, 1994 allegations within the limitations period.

■ This case's facts do not fall under the category of continuing violation cases which Speer seeks to invoke: the covert theory, under which "the plaintiff charges that the employer has, for a period of time, followed a practice of discrimination, but has done so covertly, rather than by way of an open notorious policy." *Selan*, 969 F.2d at 565 (quoting *Stewart v. CPC Int'l, Inc.*, 679 F.2d 117, 121 (7th Cir.1982)). As we have stated, "the purpose of permitting a plaintiff to maintain a cause of action on the continuing violation theory is to permit the inclusion of acts whose character as discriminatory acts was not apparent at the time they oc-

curred." *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 446 (7th Cir.1994). It is undisputed that Speer was aware of the nature of Raymond's alleged acts as they occurred. It is also undisputed that Speer complained that she was being sexually harassed long before the limitations period expired. Raymond's alleged conduct was open, not covert, as the case law requires to invoke this version of the theory. *Galloway v. General Motors Service Parts Oper.*, 78 F.3d 1164, 1167 (7th Cir.1996); *Moskowitz v. Trustees of Purdue Univ.*, 5 F.3d 279, 281–82 (7th Cir. 1993) ("If it is only with the benefit of hindsight, after a series of discriminatory acts, that the plaintiff can realize that he is indeed a victim of unlawful discrimination, he can sue in regard to all of the acts provided he sues promptly after learning their character.... If, however, he knows or with the exercise of reasonable diligence would have known after each act that it was discriminatory and had harmed him, he may not sit back and accumulate all the discriminatory acts and sue on all within the statutory period applicable to the last one.").

■ The continuing violation theory also cannot save Speer's case because there is no anchor allegation of sexual harassment within the applicable limitations period. Allegations that Raymond yelled at her, did not make her feel as if she was part of the work group, and gave Speer a negative performance evaluation are not acts of a sexual nature. Not all harassment falls within the class of conduct prohibited by Title VII, *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67, 106 S.Ct. 2399, 2405, 91 L.Ed.2d 49 (1986); *Saxton v. American Telephone & Telegraph Co.*, 10 F.3d 526, 533 (7th Cir. 1993), and a poor performance evaluation alone, even if undeserved, is not an adverse action for purposes of Title VII. *Smart v. Ball State Univ.*, 89 F.3d 437, 442 (7th Cir. 1996). Speer pleaded any other conduct which occurred within the limitations period as retaliatory or as part of her pregnancy discrimination claims, not as discriminatory.

■ Speer also argues that she "waited and depended upon the remedial actions of her employer to relieve her from the continued hostile work environment about which

she complained" and that she "should not now be penalized" by the statute of limitations "from the legal remedy which she may otherwise have been afforded had she earlier filed Title VII discrimination charges and allowed for the employer to respond to her complaints." Speer is incorrect that her internal complaint gave her no relief, as any overt sexual harassment ceased in December 1993 after Fenton and Smedinghoff spoke with Raymond. Further, we have noted the inaccuracy of this tolling argument before. That the resolution of her internal complaint was different than Speer would have liked is not an independent and actionable wrong. "[A]n employer's refusal to undo a discriminatory decision is not a fresh act of discrimination." *Graehling v. Village of Lombard*, 58 F.3d 295, 297 (7th Cir.1995). "An employee's pursuit of an internal grievance procedure does not affect the date on which his claim accrued." *Soignier*, 92 F.3d at 553. If we found a continuing violation of Title VII on these facts, then in many hostile work environment cases the statute of limitations period would never end, as the circumstances of the workplace (like a supervisor continuing to work with an employee) often do not change even though discriminatory acts cease.

Speer should have filed no later than three hundred days after April 1994 when she received the company's internal report dissatisfactory to her. Because Speer contacted the women's rights organization that told her about the EEOC filing procedure, there is no question she knew where to turn if she hit a snag. She just did not follow through. Management's talk with Raymond cured at least the sexually harassing nature of Raymond's conduct. If Speer continued to feel uncomfortable after that point, she should have filed the claim, especially when she knew management did not see the facts her way.

The incidents about which Speer complains occurred over a period of many months. Even when these events are capsulized into a paragraph describing an accumulation of unacceptable behavior, the behavior did end. Speer was aware of her claims no later than April 1994, at which time she had notice that

she should have filed a claim with the EEOC. She could have filed her claim then or at any time within three hundred days thereafter. Speer's delay in filing allowed her cause of action to expire.

## C. *Denial of Leave to Amend Complaint*

■■■ Speer also challenges the district court's denial of leave to. amend her complaint. She wanted to add the theory that she had been subjected to quid pro quo harassment in addition to hostile work environment, which she had pleaded and argued all along. Two weeks after responding to the company's summary judgment motion, Speer moved for leave to amend her complaint to add allegations that Raymond failed to promote her and to deliver a promised raise because she did not capitulate to his demands; she withdrew the motion but indicated to defense counsel that she would refile the motion. In granting Rand McNally summary judgment, the district court noted that it would not have granted Speer's motion for leave to amend her complaint because discovery was complete and "to permit Speer ... to add a new claim would not only be grossly inefficient, but would be patently unfair to Rand."

■■■ The district court did not abuse its discretion in denying Speer leave to amend her complaint to include this second theory of liability. The first time she raised this issue was in a single-page argument in her brief in opposition to the company's summary judgment motion. "A plaintiff may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment." *Shanahan*, 82 F.3d at 781. When Speer raised a quid pro quo theory for the first time, three years had elapsed since she first raised her sexual harassment claim. She had numerous chances to make her quid pro quo allegations: in her detailed internal complaint; in her charge filed with the EEOC; in her fifty-paragraph, four-count complaint; in her February 1996 deposition; and when she read and signed that deposition. She did not. All along, Speer identified hostile work environment rather than quid pro quo harassment as her complaint. The district court was well within its discre-

tion not to allow Speer to proceed on such a theory when discovery had ended and a summary judgment motion was pending. *See Hindo v. Univ. of Health Sciences*, 65 F.3d 608, 615 (7th Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 915, 133 L.Ed.2d 846 (1996); *Sanders v. Venture Stores, Inc.*, 56 F.3d 771, 774–75 (7th Cir.1995) (and cases cited therein).

## III.

Speer did the right thing by approaching Rand McNally's management and alerting it of this problem. The company's investigation, while not resolving the situation satisfactorily to her, had the desired effect of stopping the overt sexual harassment. If nothing else, that purpose of an internal investigation was achieved, to Rand McNally's credit. Speer had several opportunities to bring her claim in a timely fashion, but she did not capitalize on them.

Neither equitable estoppel nor the continuing violation doctrine extend the applicable statute of limitations within which Speer failed to file her claim; therefore, her suit is time-barred. The district court was well within its discretion to deny her motion to amend her complaint to add another liability theory at such a late date. Accordingly, the district court's grant of summary judgment to Rand McNally is

AFFIRMED.