Marla LEWIS, Plaintiff,

v.

SIMMONS AIRLINES, INC. and AMR Eagle, Inc., Defendants.

No. 95–CV–2301.

United States District Court, C.D. Illinois, Danville/Urbana Division.

Aug. 18, 1998.

Steven L. Blakely, Acton & Snyder, Danville, IL, for Plaintiff.

Cheryl R. Tama, Winston & Strawn, Chicago, IL, Carol A. Dison, Beckett & Associates, Urbana, IL, for Defendants.

## ORDER

MCCUSKEY, District Judge.

Plaintiff, Marla Lewis, filed an amended complaint (# 12) against Defendants Simmons Airlines, Inc. and AMR Eagle, Inc. She alleged that Defendants violated Title VII (42 U.S.C. § 2000e *et seq.*) because she was sexually harassed by her supervisor, Rich Gorham, during the course of her employment. This matter is before the court on Defendants' Motion for Summary Judgment (# 53) and Motion to Strike Plaintiff's Exhibits (# 61). The Motion to Strike (# 61) is DENIED. The Motion for Summary Judgment (# 53) is GRANTED.

### FACTS

Plaintiff began working for Defendant Simmons Airlines, Inc. (Simmons) on December 18, 1988. Defendant AMR Eagle is Simmons' parent corporation. Plaintiff was working as a full-time station agent and transferred to Champaign in January 1993. At that time, Simmons' general manager in Champaign was Kevin Michael. Richard Gorham become the general manager in Champaign in July 1993. Plaintiff had previously worked with Gorham in Terre Haute, Indiana. At that time, Gorham was the lead agent but not the general manager.

In her deposition taken June 24, 1997, Plaintiff described events which occurred after Gorham become her supervisor in Champaign. She stated that, in July 1993, Gorham backed Plaintiff up against a wall and used both of his arms to keep her in place. He said he hoped she would not tell anyone about anything that happened in Terre Haute. Plaintiff stated that Gorham was referring to "fights" between Gorham and other Simmons' employees. Plaintiff agreed, and Gorham puckered his lips to indicate a kiss. Also, shortly after he became general manager, Gorham began calling Plaintiff "Marlena" rather than "Marla." Plaintiff told him on numerous occasions not to call her Marlena, but Gorham told her that

Marlena "sounded sexier to him." Plaintiff testified that Gorham called her "Marlena" on a daily basis. In July and August 1993, Gorham made comments regarding Plaintiff's breast size six or seven times. Plaintiff also described an incident which occurred in September 1993. She said that Gorham told her he would like to have sex with Allison, a female employee of another airline. Also in September 1993, Plaintiff overheard a conversation where Gorham made what she interpreted as a sexually suggestive remark to Allison and another female employee of that airline.

On September 1, 1993, Plaintiff applied for a transfer to Lafayette, Indiana. She did not get the position. She held Gorham responsible because she believed he gave her a poor recommendation. She testified that Gorham frequently gave her "write-ups" for minor infractions, including being just a few minutes late.

Plaintiff stated that, after Gorham became general manager, the police department put a hidden camera in the agent checkout room in order to investigate a series of thefts. Gorham told her that he had a videotape of her undressing in that room. He also told her that he "let all of his buddies look at it." Plaintiff could not remember when this incident occurred, except that it was in September 1993 or after.

Plaintiff stated that she began keeping notes regarding Gorham's conduct in September 1993 because the situation became "intolerable" and she knew she needed to do something to protect herself. She testified that she was a "nervous wreck" because of Gorham's conduct by September 1993.

On October 26, 1993, Gorham told Plaintiff she could always talk to him about her problems "especially if it's something personal." Also on October 26, 1993, Plaintiff's former general manager, Kevin Michael, advised her to take notes regarding everything that was happening. Michael also told Plaintiff that she should look for a new job. He said Gorham told him that Plaintiff would not be working in Champaign much longer. Plaintiff testified that Michael said she would not get any help from Simmons' upper management. On October 28, 1993, Gorham told

Plaintiff that Plaintiff had gotten him in trouble with his girlfriend because she thought Plaintiff and Gorham were "spanking each other." Around the same time, Gorham told her he could not imagine her having sex with her boyfriend.

On November 9, 1993, Gorham called Plaintiff an "idiot" and Marlena. On November 16, 1993, he called her Marlena again. On November 21 or 22, 1993, Plaintiff was in Gorham's office and bent over his desk to look at the computer. Gorham said, "Oh, Marla, you shouldn't be bending over like that." On November 24, 1993, Plaintiff gave Gorham a letter of resignation. She stated that she was resigning due to his "constant intimidation and harassment." On December 1, 1993, Gorham yelled at her because of her letter accusing him of intimidation and harassment. Gorham told her he could talk to any employee any way he saw fit. Plaintiff wrote another letter that day and resigned, effective immediately.

Plaintiff filed a charge of discrimination on September 3, 1994. She received a right to sue letter and filed her original complaint in this court on December 27, 1995. On February 23, 1998, Defendants filed a Motion for Summary Judgment, a Memorandum in Support of the Motion for Summary Judgment, and a Statement of Undisputed Facts. Defendants claimed that summary judgment should be granted because: (1) Plaintiff's evidence does not establish a sexually hostile work environment; (2) any evidence of alleged harassing conduct prior to November 7, 1993, is barred by the statute of limitations; (3) Plaintiff never reported Gorham's conduct prior to her resignation; (4) Plaintiff's evidence does not establish a constructive discharge; and (5) Defendant AMR Eagle is not liable because it was not Plaintiff's employer.

Plaintiff filed a Memorandum in Opposition to Defendants' Motion for Summary Judgment. She also filed a Response to Defendants' Statement of Undisputed Facts and an Additional Statement of Undisputed Facts. Plaintiff attached a transcript of her deposition in support of her statement of facts. Defendants filed a Motion to Strike and later

filed a Reply Memorandum of Law. For the reasons that follow, this court denies Defendants' Motion to Strike and grants Defendants filed a Motion to Strike and later filed a Reply Memorandum of Law. For the reasons that follow, this court denies Defendants' Motion to Strike and grants Defendants' Motion for Summary Judgment. This court finds that most of the evidence presented by Plaintiff is barred by the relevant statute of limitations.

## ANALYSIS

## I. MOTION TO STRIKE

· Defendants filed a Motion to Strike asking this court to strike the portions of Plaintiff's deposition transcript which are not referenced in her Response and Additional Statement of Undisputed Facts. Defendants argue that these portions are "immaterial, impertinent, prejudicial and may contain hearsay and other inadmissible evidence." However, Defendants filed a Reply Memorandum of Law in which they had the opportunity to identify any misleading passages from the deposition transcript. Accordingly, Defendants' Motion to Strike is denied. *See Lynn v. Acme Metals, Inc.,* 1995 WL 370230 n. 1 (N.D.Ill.1995).

## II. SUMMARY JUDGMENT

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); see also *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In ruling on a motion for summary judgment, a district court has one task and one task only: to decide, based upon the evidence of record, whether there is any material dispute of fact that requires a trial. *Waldridge v. American Hoechst Corp.,* 24 F.3d 918, 920 (7th Cir.1994). In making this determination, the court must consider the evidence in the light most favorable to the party opposing summary judgment. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158–59, 90

S.Ct. 1598, 26 L.Ed.2d 142 (1970). The burden of establishing a lack of any genuine issue of material fact rests on the movant. *Jakubiec v. Cities Service Co.,* 844 F.2d 470, 473 (7th Cir.1988). However, neither the mere existence of some factual dispute between the parties nor the existence of some metaphysical doubt as to the material facts is sufficient to defeat a motion for summary judgment. *McCreary v. Libbey–Owens–Ford Co.,* 132 F.3d 1159, 1164 (7th Cir.1997).

## A. SEXUAL HARASSMENT

█ Section 703(a) of Title VII forbids an employer—

(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's ... sex. 42 U.S.C. § 2000e–2(a)(1).

"[S]exual harassment so 'severe or pervasive' as to 'alter the conditions of [the victim's] employment and create an abusive working environment' violates Title VII." *Faragher v. City of Boca Raton,* —— U.S. ——, 118 S.Ct. 2275, 2283 (1998), quoting *Meritor Savings Bank, FSB v. Vinson,* 477 U.S. 57, 67, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986). Accordingly, a claim of hostile work environment sexual harassment requires a showing of severe or pervasive conduct. *Burlington Industries, Inc. v. Ellerth,* —— U.S. ——, 118 S.Ct. 2257, 2265 (1998). Conduct that is not severe or pervasive enough to create an environment that a reasonable person would find hostile or abusive is beyond Title VII's purview. *Oncale v. Sundowner Offshore Services, Inc.,* —— U.S. ——, 118 S.Ct. 998, 1003, 140 L.Ed.2d 201 (1998). In addition, Title VII does not prohibit all verbal or physical harassment in the workplace; it is directed only at discrimination because of sex. *Oncale,* 118 S.Ct. at 1002. Simple teasing, offhand comments and isolated incidents, unless extremely serious, will not amount to discriminatory changes in the terms and conditions of employment. *Faragher,* 118 S.Ct. at 2283. Properly applied, these standards "will filter out complaints attacking 'the ordinary tribulations of the workplace, such as

**982**

the sporadic use of abusive language, gender-related jokes, and occasional teasing.' " *Faragher,* 118 S.Ct. at 2283–84, quoting B. Lindemann & D. Kadue, Sexual Harassment in Employment Law 175 (1992).

■ The Seventh Circuit has recognized that the concept of sexual harassment is designed to protect working women from the kind of male attentions that can make the workplace hellish for women. *Baskerville v. Culligan International Co.,* 50 F.3d 428, 430 (7th Cir.1995). However, it is not designed to purge the workplace of vulgarity. *Baskerville,* 50 F.3d at 430. The court recognized there is a line that separates the merely vulgar and mildly offensive from the deeply offensive and sexually harassing. *Baskerville,* 50 F.3d at 431. Offensive behavior which amounts to almost daily comments, gestures, and innuendo of a sexual nature is actionable under Title VII. *Dey v. Colt Construction & Development Co.,* 28 F.3d 1446, 1456 (7th Cir.1994). However, isolated odd and inappropriate behavior is not actionable. *Gleason v. Mesirow Financial, Inc.,* 118 F.3d 1134, 1145 (7th Cir.1997).

### B. STATUTE OF LIMITATIONS

■ In order to maintain a Title VII action, a plaintiff must file a charge of discrimination with the EEOC within 300 days after the alleged unlawful employment practice occurred. 42 U.S.C. § 2000e–5(e)(1) (1992); *Galloway v. General Motors Service Parts Operations,* 78 F.3d 1164, 1166 (7th Cir. 1996). In this case, it is undisputed that Plaintiff's charge of discrimination was filed on September 3, 1994. Accordingly, Defendants argue that any allegations regarding conduct which occurred prior to November 7, 1993 (300 days before September 3, 1994) are time-barred. Plaintiff argues that all of Gorham's conduct is relevant because it constituted "a continuing practice of violations."

■ The purpose of permitting a plaintiff to maintain a cause of action on the continuing violation theory is to permit the inclusion of acts whose character as discriminatory acts was not apparent at the time they occurred. *Speer v. Rand McNally & Co.,* 123 F.3d 658, 663–64 (7th Cir.1997). However, if it was evident long before the

plaintiff finally sued that she was the victim of actionable harassment, "she cannot reach back and base her suit also on conduct that occurred outside the statute of limitations; for she had no excuse for waiting that long." *Galloway,* 78 F.3d at 1167. If the plaintiff believed the conduct was discriminatory more than 300 days before filing her charge of discrimination, she cannot invoke the continuing violation doctrine to reach conduct occurring more than 300 days before the filing of her charge. See *Lynn v. Acme Metals Inc.,* 1995 WL 472747 (N.D.Ill.1995).

■ In this case, Gorham's most egregious conduct occurred prior to November 7, 1993. For example, Plaintiff testified that Gorham told her he had a videotape of her undressing which he showed to his "buddies." Plaintiff testified that she could not remember exactly when this conduct took place but stated that she believed it was in September, October or November. However, Plaintiff did not include this incident in the written notes she began keeping in September. Accordingly, it is clear to this court that Gorham's comments regarding the videotape were most likely made early in September 1993 and were certainly made prior to November 7, 1993. Gorham's remarks about Plaintiff's breasts occurred even earlier, in July and August 1993. In fact, Plaintiff testified that by September 1993 she was a "nervous wreck" because of Gorham's conduct. Also in September 1993, she began keeping notes regarding Gorham's conduct because the conditions of her employment had become "intolerable." In addition, she believed that an adverse employment action was taken against her when she did not receive a requested transfer on September 10, 1993. As a result, the facts show Plaintiff was aware of the nature of Gorham's conduct as it occurred. See *Speer,* 123 F.3d at 664. Because Plaintiff was clearly aware of the sexual harassment in September 1993, a charge regarding this conduct had to be filed within 300 days.

■ In this case, based upon *Galloway,* Plaintiff cannot reach back and base her suit on conduct which occurred outside the statute of limitations. Accordingly, only conduct occurring after November 7, 1993, is rele-

vant. Plaintiff testified that, after that date, Gorham called her an "idiot" and "Marlena," Gorham told her she should not bend over like that, and Gorham yelled at her after she accused him of intimidation and harassment. This conduct is not enough to establish severe and pervasive conduct amounting to a hostile environment under the applicable Supreme Court and Seventh Circuit precedent. While certainly inappropriate and "odd," Gorham's conduct after November 7, 1993, does not rise to the level of actionable behavior. See *Gleason,* 118 F.3d at 1145; *Faragher,* 118 S.Ct. at 2283–84 ("sporadic use of abusive language, gender-related jokes, and occasional teasing" not actionable under Title VII). In addition, Gorham's actions in calling Plaintiff an "idiot" and in yelling at Plaintiff were "not acts of a sexual nature" and do not fall within the class of conduct prohibited by Title VII. *Speer,* 123 F.3d at 663. This court concludes that no genuine issue of material facts exists regarding whether Defendants violated Title VII during the relevant time period. Accordingly, Defendants are entitled to summary judgment. Because of this conclusion, there is no need to decide the remaining issues raised by Defendants in support of their request for summary judgment.

IT IS THEREFORE ORDERED THAT:

(1) Defendants' Motion to Strike (#61) is DENIED.

(2) Defendants' Motion for Summary Judgment (#53) is GRANTED. As a result of the court's determination, this case is terminated. The parties shall be responsible for their own court costs.