Willie S. PHILLIPS; Curtissene Anderson; Todd Brooks; Lori Dillard; Yulander Edwards; Emma Fields; Richard Goudy; Lisa Goudy; Kevin Gray; Carilsa Miles; Linda R. Pettes; Mary L. Phillips; Lisa Prater; Marcia Spence; Jean Washington; Lerdon Woodfold, Plaintiffs–Appellants,

v.

William S. COHEN, Secretary of Department of Defense, Defendant–Appellee.

No. 99–4051.

United States Court of Appeals, Sixth Circuit.

Jan. 22, 2001.

Before BOYCE F. MARTIN, Jr., RALPH B. GUY, Jr., and COLE, Circuit Judges.

OPINION

COLE, Circuit Judge.

Plaintiff–Appellant Willie S. Phillips brought the instant Title VII employment discrimination action on behalf of employees of the Defense Finance and Accounting Service–Columbus Center ("DFAS–CC"), an entity within the Department of Defense under Secretary William S. Cohen ("Defendant"). The district court dismissed the action on the ground that Phillips failed to file an administrative complaint within the forty-five-day limitations period, as required under the applicable regulations. Plaintiffs appeal, asserting the following points of error: (1) the district court erred in dismissing the action as to all members of the putative class, rather than just Phillips as class agent; (2) the district court erred in finding that Phillips's administrative complaint was not timely filed; (3) the district court erred in finding that Phillips was not entitled to equitable tolling of the limitations period under the "continuing violation" doctrine; and, (4) the district court erred in denying Phillips the opportunity to conduct discovery prior to ruling on Defendant's motion. For the following reasons, we REVERSE the decision of the district court and REMAND for further proceedings.

I. BACKGROUND

DFAS–CC is an agency within the Department of Defense consisting of 3,061 employees in ten different directorates or offices. The October 20–26, 1996, edition of the DFAS–CC newsletter contained an article responding to various employee questions regarding employment policies at the Columbus Center. A portion of the article addressed a question about the lack of minority employees in upper-level positions at the Columbus Center. The article discussed the percentages of upper-level positions filled by minorities and offered an explanation for the apparent under-representation of minorities in such positions.

Plaintiff Willie S. Phillips, an African–American male employee at DFAS–CC, took issue with the explanation contained with this article. On October 25, 1996, Phillips sent a letter to the director of the Columbus Center, Colonel Michael Kelly, decrying the lack of minority employees above the GS–12 level and charging that the agency's discriminatory promotion practices guaranteed that a "white layer" of supervisors would remain in the top positions. Phillips had registered similar complaints in September 1996, when he contacted an Equal Employment Opportunity ("EEO") counselor at DFAS–CC re-

garding the agency's failure to promote him to the GS–11 grade level.

In response to employee concerns, Colonel Kelly formed a Process Action Team ("PAT") to investigate promotion practices at DFAS–CC. The PAT conducted an investigation and issued a report on March 3, 1997. The report presented statistical evidence that minority groups—especially African–American males—were under-represented at the higher grade levels at the Columbus Center.

On March 5, 1997, Phillips filed a class complaint with an EEO counselor alleging racial discrimination in DFAS–CC's promotion practices, including: (1) the assignment of whites to non-posted, temporary, or new positions; (2) the practice of racial discrimination in awarding promotions to higher grade positions; (3) the use of a disproportionate number of white selection officials; (4) discrimination through the alteration of promotion requirements or application of vague promotion criteria; (5) manipulation of performance appraisals; and (6) discrimination through pre-selection for positions, selection based on favoritism and undue influence, and selection in violation of time and grade requirements. In his complaint, Phillips claimed to be the class agent for sixteen African–American employees in grades GS–6 through GS–12—all Plaintiffs in the instant lawsuit—who had worked at the Columbus Center since 1989.

The EEO counselor at DFAS–CC forwarded Phillips's complaint to the Equal Employment Opportunity Commission ("EEOC") for adjudication by an administrative law judge ("ALJ"). The ALJ dismissed Phillips's complaint on the grounds that it had not been timely filed with the EEO counselor at DFAS–CC. The ALJ found that Phillips, as putative class agent, had a "reasonable suspicion" of the alleged discriminatory practices more than forty-five days prior to his contact with the EEO officer on March 5, 1997, and thus was time-barred under Title VII's regulations from pursuing his claim. The ALJ further found that Phillips's complaint was not subject to equitable tolling or the application of the continuing violation theory.

Plaintiffs then filed the instant action in the United States District Court for the Southern District of Ohio, alleging that they had been discriminated against based upon race in promotional opportunities, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–5(f)(2), – 16(c) (1994). Defendant moved for dismissal, or, in the alternative, for summary judgment, on the ground that Plaintiffs' action was barred because Phillips, as class agent, was untimely in exhausting his administrative remedies. Although the district court stayed discovery pending its ruling on Defendant's motion, it allowed Plaintiffs to supplement their opposition to Defendant's motion with supporting affidavits. Since the parties had submitted materials outside the pleadings, the district court addressed Defendant's motion as a motion for summary judgment. In an opinion and order issued July 30, 1999, the district court granted summary judgment in favor of Defendant.

## II. DISCUSSION

### A. Standard of Review and Summary Judgment Standard

This court reviews the district court's grant of summary judgment *de novo*. *See E.E.O.C. v. Univ. of Detroit,* 904 F.2d 331, 334 (6th Cir.1990). Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a

judgment as a matter of law." Fed. R.Civ.P. 56(c). The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-moving party's case. *See Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1476 (6th Cir.1989) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). An issue of fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmovant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Once the moving party satisfies its burden, the burden shifts to the nonmoving party to set forth specific facts showing a triable issue. *See Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). In meeting this burden, the nonmoving party must adduce more than a scintilla of evidence; it is not sufficient for the nonmoving party merely to "show that there is some metaphysical doubt as to the material facts." *Id.* (internal quotation marks omitted).

### B. Exhaustion of Administrative Remedies Under Title VII

■ Federal employees must exhaust their administrative remedies under Title VII before bringing suit in federal court. *See Haithcock v. Frank*, 958 F.2d 671, 675 (6th Cir.1992). The regulations governing administrative remedies require that aggrieved federal employees contact an agency EEO counselor within forty-five days of the alleged discriminatory event. *See* 29 C.F.R. § 1614.105(a)(1) (2000). If complainants fail to meet this time limit, their complaints are subject to dismissal. *See* 29 C.F.R. § 1614.107(a)(2), (b).

■ To determine whether a complainant has satisfied the timeliness requirement of 29 C.F.R. § 1614.105(a)(1), the Supreme Court has held that the forty-five-day filing period begins to run when the aggrieved employee first knew or reasonably should have known of the discriminatory conduct or practices of which he or she complains. *See Delaware State College v. Ricks*, 449 U.S. 250, 259–62, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980). Thus, the forty-five days in which a complainant must contact an EEO counselor begins when the complainant should reasonably suspect discrimination. *See id.* at 258, 101 S.Ct. 498 ("the proper focus is upon the time of the discriminatory acts, not upon the time at which the consequences of the acts became most painful"); *Benford v. Frank*, 943 F.2d 609, 612 (6th Cir.1991) (holding that employee must contact EEO office within forty-five days of the day on which reasonable suspicions of discrimination arose).

■ Failure to file a timely charge with an EEO counselor does not require the dismissal of the aggrieved employee's Title VII action, however. This is because the time limits for filing set out in 29 C.F.R. § 1614.105(a)(1) are not jurisdictional, but are rather in the nature of a statute of limitations which may be subject to waiver, estoppel, or equitable tolling. *See Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982); *Brown v. Crowe*, 963 F.2d 895, 899 (6th Cir.1992). Courts have cautioned, however, against reading the timely filing requirement out of Title VII through liberal application of the doctrine of equitable tolling, and have approved the use of equitable principles only under limited circumstances. *See Baldwin County Welcome Ctr. v. Brown*, 466 U.S. 147, 151, 104 S.Ct. 1723, 80 L.Ed.2d 196 (1984); *Puckett v. Tennessee Eastman Co.*, 889 F.2d 1481, 1487 (6th Cir.1989).

## C. Plaintiffs' Complaint Was Not Timely Under 29 C.F.R. § 1614.105

█ Plaintiffs contend that the district court erred in dismissing Plaintiffs' complaint for failure to timely exhaust administrative remedies. Specifically, Plaintiffs dispute the court's finding that Phillips had a reasonable suspicion of discrimination more than forty-five days prior to the date on which he filed the complaint.

Phillips contacted the EEO counselor at DFAS–CC to file his class complaint on March 5, 1997. Plaintiffs argue that this complaint was timely because Phillips learned of the discriminatory practices alleged in the complaint only after the PAT report was released on March 3, 1997. The record indicates, however, that Phillips had a reasonable suspicion of the discriminatory practices alleged in his complaint much earlier than March 3, 1997. For example, the report from Phillips's first consultation with an EEO counselor in September 1996 reveals that Phillips complained about discriminatory promotion practices at DFAS–CC well·before the start of the forty-five-day limitations period.[1] Phillips's October 25, 1996, letter to Colonel Kelly also contained allegations that were nearly identical to those put forward in his March 5, 1997, complaint.[2]

On appeal, Plaintiffs argue that the allegations Phillips made during the fall of 1996 do not prove that Phillips had a "reasonable suspicion" of the *disparate impact* discrimination alleged in his March 5, 1997, administrative complaint. Rather, Plaintiffs contend that these earlier allegations suggest only that Phillips believed that he personally was the victim of *disparate treatment* discrimination. This argument is not borne out by the record, however. Although it is probably true that the PAT report confirmed Phillips's belief that a "glass ceiling" existed for minority employees at DFAS–CC, Phillips was already on notice of the alleged under-representation of minorities in upper-level positions at DFAS–CC at the time the PAT report was released. Indeed, the October 20–26, 1996, newsletter that prompted Phillips's letter to Colonel Kelly compared data regarding the racial and ethnic makeup of the upper-level workforce at the Columbus Center with data from the community at large, and concluded that there should be six African–American males in GS 13–15 positions at the Center, as opposed to just five. It appears, therefore, that Phillips had a "reasonable suspicion" of the discrimination of which he complained at least as early as November 1996, well outside the forty-five-day limitations period.

Thus, the district court did not err in concluding that Plaintiffs failed to exhaust their administrative remedies within the applicable limitations period.

## D. Plaintiffs Are Entitled to Equitable Tolling Under the "Continuing Violation" Doctrine

█ Plaintiffs argue in the alternative that even if Phillips did not file his admin-

---

1. Inasmuch as Phillips filed his complaint on March 5, 1997, the alleged discriminatory matter giving rise to Phillips's claim must have occurred on or after January 19, 1997, in order for Phillips to have complied with the forty-five-day filing requirement set out in 29 C.F.R. § 1614.105(a)(1).

2. Phillips's October 25, 1996, letter alleges "racist policies" and "unethical personnel practices" which prevent minority employees from obtaining "the coveted positions above GS–11," thus "insuring that a white layer is on top and will remain." Phillips's March 5, 1997, complaint alleges that DFAS–CC has engaged in "discriminatory practices regarding promotions, performance rating, performance awards and hiring practice which has [sic] created a glass ceiling preventing upper mobility in the higher GS/GM Rating."

istrative complaint within the requisite forty-five-day time limit, they are nonetheless entitled to equitable tolling of the limitations period under the "continuing violation" doctrine. This Court has recognized that an ongoing, continuous series of discriminatory acts may be challenged if one of those discriminatory acts occurred within the limitations period. *See Alexander v. Local 496, Laborers' Int'l Union of N. Am.*, 177 F.3d 394, 408 (6th Cir.1999), *cert. denied* 528 U.S. 1154, 120 S.Ct. 1158, 145 L.Ed.2d 1070 (2000); *Haithcock*, 958 F.2d at 677; *Dixon v. Anderson*, 928 F.2d 212, 216 (6th Cir.1991). If a plaintiff can show that the defendant has engaged in a continuing violation, then a court may consider all relevant actions allegedly taken pursuant to an employer's discriminatory policy or practice, including those that would otherwise be time-barred. *See Alexander*, 177 F.3d at 408 (quoting *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 713 (2d Cir.1996)).

■ Continuing violations fall within two categories of narrowly limited exceptions to the usual rule that statutes of limitations are triggered at the time the alleged discriminatory act occurred. *See id.; Haithcock*, 958 F.2d at 677. The first category of continuing violations arises "where there is some evidence of present discriminatory activity giving rise to a claim of a continuing violation; that is, where an employer continues presently to impose disparate work assignments or pay rates between similarly situated groups." *Dixon*, 928 F.2d at 216. However, "at least one of the forbidden discriminatory acts must have occurred within the relevant limitations period." *Id.* The second category of continuing violations arises "where there has occurred a longstanding and demonstrable policy of discrimination.... Unrelated incidents of discrimination will not suffice to invoke this excep-

tion; rather there must be a continuing over-arching policy of discrimination." *Id.* at 217 (internal quotations omitted).

Defendant argues that the continuing violation exception to Title VII's limitations period is unavailable when the plaintiff was, or should have been, aware that he was being unlawfully discriminated against while the earlier acts, now untimely, were taking place. Defendant cites cases from the First, Seventh, and Tenth circuits supporting this proposition. *See Provencher v. CVS Pharmacy, Div. of Melville Corp.*, 145 F.3d 5, 14 (1st Cir. 1998) ("Even where a plaintiff alleges a violation within the limitations period, the continuing violation claim will fail if the plaintiff was or should have been aware that he was being discriminated against while the earlier acts, now untimely, were taking place."); *Speer v. Rand McNally & Co.*, 123 F.3d 658, 663 (7th Cir.1997) (holding that continuing violation doctrine is intended to permit inclusion of only those acts whose discriminatory character was not apparent at the time they occurred); *Galloway v. General Motors Serv. Parts Operations*, 78 F.3d 1164, 1166–67 (7th Cir.1996) (holding that there is no continuing violation unless it would have been unreasonable to expect plaintiff to sue before time period ran on defendant's conduct); *Martin v. Nannie & Newborns, Inc.*, 3 F.3d 1410, 1415 n. 6 (10th Cir.1993) (noting that continuing violation theory is premised on equitable notion that statute of limitations should not begin to run until a reasonable person would be aware that his rights have been violated); *Sabree v. United Brotherhood of Carpenters and Joiners Local No. 33*, 921 F.2d 396, 402 (1st Cir.1990) (holding that what matters is whether, when, and to what extent plaintiff was on inquiry notice).

The district court found support for Defendant's reliance on this line of cases in

this Court's decision in *Conlin v. Blanchard,* 890 F.2d 811 (6th Cir.1989), in which we held that "[i]n order to allege a continuing violation with regard to employment decisions, a court is to look at what event should have alerted the average lay person to protect his rights." *Id.* at 815 (internal quotations omitted). In *Conlin,* plaintiffs alleged that affirmative action policies of their state agency-employer violated the Fourteenth Amendment. *See id.* The Court found that because plaintiffs knew about such policies at the time they were denied promotions (which occurred outside the relevant limitations period), they were not now able to allege a continuing violation based on their employer's current application of such policies. *See id.* Defendant argues that *Conlin* prevents such "knowing Plaintiffs" from invoking the continuing violation doctrine.

Subsequent decisions of this Court have not construed the holding of *Conlin* as broadly as Defendant urges, however. To the contrary, this Court has repeatedly recognized and applied the doctrine of continuing violation in cases similar to the one at bar. *See, e.g., Alexander,* 177 F.3d at 407–09 (finding continuing violation where defendant-union engaged in long-standing practice of denying membership to African–American applicants, despite claim that plaintiffs had raised similar complaints of discrimination outside the relevant limitations period); *Haithcock,* 958 F.2d at 677–79 (acknowledging that court must determine the event that should have alerted average lay person to protect his rights, but nevertheless finding defendant engaged in a continuing violation); *Hull v. Cuyahoga Valley Joint Vocational Sch. Dist. Bd. of Educ.,* 926 F.2d 505, 511 (6th Cir.1991) (quoting *Conlin* and finding that "prior to events surrounding plaintiff's discharge, plaintiff was not warranted in filing a race discrimination suit").

■ As the Court noted in *Hull,* "there are important policy reasons not to require that a discrimination suit be filed at the first instance of discrimination or not at all." 926 F.2d at 511. Such a rule "would frustrate the broad remedial purposes of civil rights laws which encourage the eradication of discrimination." *Id.* (citing *Roberts v. North American Rockwell Corp.,* 650 F.2d 823, 827 (6th Cir.1981)). Our observation in *Hull* is particularly apt here, where Plaintiff only fully appreciated the extent of DFAS–CC's allegedly discriminatory employment practices after the agency came forward with the statistical evidence contained in the PAT report. We conclude, therefore, that Plaintiffs are entitled to invoke the continuing violation doctrine despite the evidence that, prior to the start of the forty-five-day limitations period, Phillips suspected Defendant to be employing allegedly discriminatory policies.

There is no question that Plaintiffs alleged a continuing violation in their March 5, 1997, EEOC charge and in their complaint. Although the district court could not determine which type of continuing violation Plaintiffs alleged in their complaint (*i.e.,* "serial" or "systemic"), it is clear that Plaintiffs sought to establish the existence of an over-arching policy of discrimination at DFAS–CC which resulted in a "glass ceiling" for minority employees. Plaintiffs do not allege a series of discrete acts, some falling within the limitations period and some without. *See Haithcock,* 958 F.2d at 678. Rather, they charge that DFAS–CC has engaged in "a longstanding and demonstrable policy of discrimination" by virtue of its discriminatory promotion practices. *Dixon,* 928 F.2d at 217. We thus construe Plaintiffs' complaint as alleging a "systemic" continuing violation falling within the second category recognized

by the Court in *Alexander*. *See* 177 F.3d at 408.

█ To succeed in establishing a systemic continuing violation, Plaintiffs must demonstrate that at least one forbidden discriminatory act occurred within the relevant limitations period. *See Dixon*, 928 F.2d at 217–18 (holding that plaintiffs could not establish a "systemic" continuing violation if they failed to show a specific manifestation of the alleged discriminatory policy within the limitations period). *Cf. Provencher*, 145 F.3d at 14 (noting First Circuit's rule that a systemic continuing violation claim requires no identifiable act of discrimination in the limitations period). Plaintiffs contend that they have offered such proof in the form of affidavits submitted to the district court in response to Defendant's motion for summary judgment. Plaintiffs' affidavits allege that on January 30, 1997, a white female employee at DFAS–CC was given preferential treatment by DFAS–CC supervisors on account of her race. Plaintiffs claim that this employee was detailed to a financial specialist position when at the same time, other, highly qualified African–American employees were eligible for the post but were not given an opportunity to compete for it. Plaintiffs argue that this is a specific example of the very practice of discriminatory preselection for jobs complained of in their March 5, 1997, EEOC charge and in their complaint.

Notwithstanding the allegation contained in Plaintiffs' affidavits, the district court found that the Plaintiffs had failed to allege an act of discrimination falling within the limitations period and accordingly denied them equitable tolling under the continuing violation doctrine. The district court based its conclusion on the fact that Plaintiffs had not made the allegation contained in their affidavits in their original complaint. The district court also held that the "facts set forth in those affidavits are insufficient to establish that this act constituted discrimination based on race."

The district court's holding is in error. First, the district court improperly limited its consideration of Plaintiffs' continuing violation claim to the allegations contained in Plaintiffs' complaint. Under Fed. R.Civ.P. 56(c), the court should consider the "the pleadings, depositions, answers to interrogatories, and admissions on file, *together with the affidavits*" to determine if there is a genuine issue as to any material fact. The burden-shifting approach to summary judgment set out in *Liberty Lobby, Celotex*, and *Matsushita*, expressly contemplates that a nonmoving party may put forward evidence not contained in the pleadings in order to rebut a summary judgment motion. *See Street*, 886 F.2d at 1476. Despite the fact that the parties had not conducted discovery, the district court treated Defendant's motion as a motion for summary judgment. Thus, the court should have considered facts alleged in Plaintiffs' affidavits even though such facts were not contained in Plaintiffs' complaint.[3]

Second, the district court did not apply a properly deferential standard to the factual allegations contained in Plaintiffs' affidavits. It is well established that when considering a motion for summary judgment, the court must view all evidence in the

---

3. Under Fed.R.Civ.P. 8(a), Plaintiffs' complaint need only contain a short and plain statement of their claim showing that they are entitled to relief. Plaintiffs' complaint, which contained specific descriptions of Defendant's allegedly discriminatory promotion practices, more than adequately complied with this liberal "notice pleading" requirement of the Federal Rules. *See Miller v. American Heavy Lift Shipping*, 231 f.3D 242, 246 (6th Cir. 2000).

light most favorable to the nonmoving party. *See F.D.I.C. v. First Heights Bank, FSB*, 218 F.3d 566, 575 (6th Cir.2000) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)). The district court offered no explanation for its rejection of Plaintiffs' allegations, but rather flatly stated that the facts alleged were "insufficient to establish ... discrimination based on race." Viewed in the light most favorable to Plaintiffs, however, it is clear that the allegations contained in Plaintiffs' affidavits represent more than a "mere scintilla" of evidence supporting Plaintiffs' continuing violation charge. *See Liberty Lobby*, at 477 U.S. at 252, 106 S.Ct. 2505. Indeed, Plaintiffs' affidavits contained specific allegations of the very discriminatory policy charged in Plaintiffs' complaint, *i.e.*, preferential "detailing" of white employees at the expense of qualified black employees.

The dissent argues that Plaintiffs' affidavits do not allege an act which itself constituted forbidden discrimination. It is beyond dispute, however, that Title VII proscribes employment practices that are "fair in form but discriminatory in operation." *Griggs v. Duke Power Co.*, 401 U.S. 424, 431, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971). In a disparate impact case such as this, Plaintiffs need only come forward with evidence that "some form of intentional discrimination against the class of which plaintiff was a member was [the employer's] standing operating procedure." *Kovacevich v. Kent State Univ.*, 224 F.3d 806, 829 (6th Cir.2000). Here, Plaintiffs' affidavits described a specific act of preferential detailing of white employees that occurred within the relevant limitations period, and further alleged that such act prevented the promotion of African-American employees at DFAS–CC. Read in conjunction with Plaintiffs' statistically-based allegations of a "glass ceiling" at DFAS–CC, these affidavits satisfy

Plaintiffs' burden. *See Alexander*, 177 F.3d at 405 (stating that, in disparate impact case, plaintiff must prove particular employment practice caused significant adverse effects on a protected group.)

We hold, therefore, that Plaintiffs are entitled to equitable tolling of the limitations period because they have alleged a "continuing violation" as defined under Sixth Circuit case law.

### E.  Additional Issues

Plaintiffs also argue that the district court erred in dismissing the action as to all members of the putative class when the court found only that Phillips individually was time-barred from bringing suit. Plaintiffs offer no case law, however, to support the proposition that only the class agent should be dismissed for untimeliness, rather than the entire case. Whatever the case, we need not reach this issue in light of our earlier conclusion that Plaintiffs' action is not time-barred under the continuing violation doctrine. Similarly, we need not reach Plaintiffs' argument that the district court erred by denying Phillips the opportunity to conduct discovery prior to ruling on Defendant's motion.

### III.  CONCLUSION

For the foregoing reasons, we REVERSE the decision of the district court and REMAND the case for further proceedings consistent with this opinion.

### DISSENT

RALPH B. GUY, JR., Circuit Judge, dissenting.

While I agree that Phillips failed to file a timely administrative charge within the applicable period, I respectfully dissent from the conclusion that Phillips is entitled to equitable tolling with respect to his dispa-

rate impact claims under the second category of the continuing violation doctrine. I would accordingly affirm the decision to grant summary judgment to defendant.

In this circuit, the existence of a long-standing, demonstrable and "over-arching" policy of discrimination by an employer is not sufficient to establish a systemic continuing violation. Rather, as the court recognized, the plaintiff must also demonstrate that at least one forbidden discriminatory act occurred within the relevant limitations period. *See Dixon v. Anderson,* 928 F.2d 212, 217 (6th Cir.1991) (citing *Roberts v. N. Am. Rockwell Corp.,* 650 F.2d 823, 827 (6th Cir.1981) (the last of the plaintiff's repeated attempts to secure employment despite an express policy not to hire women occurred within the limitations period)).

Here, plaintiff relies solely upon evidence that on January 30, 1997, a white female was detailed into a financial specialist position while eligible African–American employees were not given an opportunity to compete for the post. Plaintiff alleged that the practice afforded the detailed white employees an advantage that resulted in their being selected when the positions were later posted. I would find that the district court did not err in concluding that the detailing of this white female was not *itself* a forbidden discriminatory act. The assignment was not a failure to promote; but, rather, was evidence that the employer continued to use the facially neutral detailing policy in its promotion practices which, along with other policies and practices, allegedly had a significant adverse effect on a protected class. *Cf. Hull v. Cuyahoga Valley Joint Vocational Sch. Dist. Bd. of Educ.,* 926 F.2d 505, 510–11 (6th Cir.1991) (non-renewal of plaintiff's teaching contract occurred within the limitations period); *Roberts,* 650 F.2d at 827 (attempt to secure employment rebuffed within limitations period). The fact that the plaintiff's Title VII claim is brought under a disparate impact theory should not relieve him of the need to demonstrate a forbidden discriminatory act within the period. *See Alexander v. Local 496, Laborers Int'l Union,* 177 F.3d 394, 409 (6th Cir.1999), *cert. denied,* 528 U.S. 1154, 120 S.Ct. 1158, 145 L.Ed.2d 1070 (2000) (serial and systematic continuing violations established where union continued to refuse membership to blacks well within the limitations period). To conclude otherwise would effectively read the timely filing requirement out of Title VII whenever disparate impact is the basis for a discrimination claim. *See Baldwin County Welcome Ctr. v. Brown,* 466 U.S. 147, 151, 104 S.Ct. 1723, 80 L.Ed.2d 196 (1984) (cautioning against reading time limits out through liberal application of equitable tolling).[1]

Finally, in affirming the district court's decision to grant summary judgment to defendant, I would also find no error in the

---

**1.** A further concern is prompted by the court's conclusion that the discriminatory act need not have been directed toward Phillips because this is a disparate impact case. Certainly, a disparate impact claim may be made without demonstrating intentional discrimination against the plaintiff. *See Griggs v. Duke Power Co.,* 401 U.S. 424, 431, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971). I would not find, however, that evidence of neutral employment practices which allegedly resulted in disparate impact on a protected group can constitute the "forbidden discriminatory acts" necessary to establish a continuing violation. In fact, this circuit has required proof that some form of *intentional* discrimination against the protected class was the employer's "standing operating procedure" in order to demonstrate a systemic continuing violation. *See Kovacevich v. Kent State Univ .,* 224 F.3d 806, 829 (6th Cir.2000) (quoting from *EEOC v. Penton Indus. Pub. Co.,* 851 F.2d 835, 838 (6th Cir. 1988) (citations omitted)).

dismissal of the action as to the putative class members. *See, Marx v. Centran Corp.,* 747 F.2d 1536 (6th Cir.1984); *Brown v. Sibley,* 650 F.2d 760, 761 (5th Cir.1981).