**UNPUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

PEGGY H. RILEY,
           *Plaintiff-Appellee,*

           v.

JOSEPH MOODY BUCKNER,
individually and in his official
capacity as Chief District Judge of
North Carolina Judicial District
15B,

           *Defendant-Appellant,*

           and

STATE OF NORTH CAROLINA,
           *Defendant.*

No. 00-1048

Appeal from the United States District Court
for the Middle District of North Carolina, at Durham.
Frank W. Bullock, Jr., District Judge.
(CA-98-1088-1)

Argued: December 7, 2000

Decided: January 8, 2001

Before WILKINSON, Chief Judge, TRAXLER, Circuit Judge, and
James C. CACHERIS, Senior United States District Judge for the
Eastern District of Virginia, sitting by designation.

Affirmed by unpublished per curiam opinion.

## COUNSEL

**ARGUED:** Lars Franklin Nance, Special Deputy Attorney General, NORTH CAROLINA DEPARTMENT OF JUSTICE, Raleigh, North Carolina, for Appellant. Larry Stephen McDevitt, William Carleton Metcalf, VAN WINKLE, BUCK, WALL, STARNES & DAVIS, P.A., Asheville, North Carolina, for Appellee. **ON BRIEF:** Michael F. Easley, North Carolina Attorney General, Valerie L. Bateman, Assistant Attorney General, NORTH CAROLINA DEPARTMENT OF JUSTICE, Raleigh, North Carolina, for Appellant.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

## OPINION

PER CURIAM:

Peggy H. Riley brought this action against Joseph Moody Buckner, a North Carolina state judge, alleging that Buckner violated her rights under the Equal Protection Clause of the Fourteenth Amendment by sexually harassing her. *See* 42 U.S.C.A. § 1983 (West Supp. 2000). The district court denied Buckner's motion to dismiss based on qualified immunity. We affirm and remand this action for further proceedings.

I.

In reviewing the district court's denial of a motion to dismiss premised on qualified immunity, we confine our review of the facts to those alleged in Riley's complaint, accepting such facts as true and viewing them in a light most favorable to Riley. *See Jenkins v. Medford*, 119 F.3d 1156, 1159 (4th Cir. 1997) (en banc). Riley began working for Buckner shortly after he was elected as judge for Judicial District 15B, Orange County, North Carolina in 1994. According to the complaint, Buckner created a "work environment and atmosphere

saturated with sexual suggestion, innuendo, and proposition." Riley alleged several general examples of how Buckner accomplished this: Buckner allegedly "made sexually suggestive and other inappropriate comments about female employees and attorneys who had appeared in his court or chambers"; he "made sexually suggestive and other inappropriate comments to certain female employees that were veiled propositions for sexual relations"; he "kept sexually explicit materials, including magazines and calendars, in his chambers . . . in plain view of [Riley] and other female employees and staff members"; and he "constantly communicated to [Riley] with profanity and suggestive and sexually explicit language."

In addition to these broad allegations, the complaint includes a specific example in support of Riley's claim against Buckner. According to Riley, in April 1997, Buckner became infuriated with his computer and Riley suggested to Buckner that he "use his Dictaphone instead of the computer to create documents that she could then transcribe for his use." In response, Buckner, who had been seated at his desk, "ran around his desk, placed both hands on his genitals, while fully clothed, and exclaimed, 'I'll show you a [expletive deleted] Dictaphone!'" Riley viewed this incident as the last straw, and she tendered her resignation.

Riley filed this action against Buckner individually and in his official capacity, asserting that Buckner sexually harassed her in violation of section 1983 and Title VII, *see* 42 U.S.C.A. § 2000e-2 (West 1994). Riley also asserted claims under state law for intentional and negligent infliction of emotional distress. Buckner's motion to dismiss all of Riley's claims was referred to a magistrate judge for a recommendation to the district court. In the end, the district court permitted Riley to go forward only on her section 1983 claim against Buckner in his individual capacity and her intentional infliction of emotional distress claim. Only the section 1983 claim is at issue on appeal.

Buckner moved to dismiss Riley's section 1983 claim on qualified immunity grounds. The heart of Buckner's argument was that Riley failed to allege facts sufficient to support a claim that she had been deprived of a federal right, *i.e.*, that Riley failed to make out a hostile work environment claim. The district court adopted the magistrate

judge's recommendation that Buckner was not entitled to qualified immunity as to Riley's section 1983 claim. Buckner moved, in the alternative, for a more definite statement of the "specific acts and words" of Buckner that created a hostile working environment. The district court denied this motion on the recommendation of the magistrate judge, who explained that although Riley's complaint was "somewhat general," it "provide[d] [Buckner] with sufficient notice of the nature and basis of [Riley's] claims to allow them to file a responsive pleading."

On appeal, Buckner makes a two-fold argument that he is entitled to qualified immunity. First, he contends that Riley's allegations, even if true, do not state a constitutional claim under section 1983. Second, Buckner contends that a reasonable judge under the same circumstances would not have known that the alleged conduct rose to the level of a constitutional violation. We disagree on both counts and return the action for further development in district court.

II.

To determine whether Buckner is entitled to qualified immunity, we follow a two-step analytical process. First, we must determine whether Riley has alleged the deprivation of a constitutional right under present-day standards. *See Wilson v. Layne*, 526 U.S. 603, 609 (1999). If so, we then proceed to determine whether Buckner is entitled to qualified immunity, *i.e.*, whether, at the time of the alleged violation, the right was clearly established, *see id.*, and "'whether a reasonable person in the official's position would have known that his conduct would violate that right,'" *Taylor v. Waters*, 81 F.3d 429, 433 (4th Cir. 1996) (quoting *Gordon v. Kidd*, 971 F.2d 1087, 1093 (4th Cir. 1992)).

A.

Riley's claim is that Buckner violated section 1983 by subjecting her to sexual harassment in the workplace. Intentional sexual harassment of a public employee by a supervisor constitutes gender discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment and is actionable under section 1983. *See Beardsley v. Webb*, 30 F.3d 524, 529 (4th Cir. 1994). Our precedent applies the

standards developed for hostile work environment claims under Title VII to claims for sexual harassment under section 1983. *See id.* A sexual harassment claim based on a hostile work environment requires the plaintiff to prove: (1) unwelcome conduct; (2) that was based on the plaintiff's sex; (3) that "was sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment"; and (4) that was imputable to the employer. *Spicer v. Commonwealth of Va. Dep't of Corrections*, 66 F.3d 705, 709-10 (4th Cir. 1995) (en banc).

Buckner argues that Riley's allegations are insufficient to show that Buckner's conduct occurred "because of" Riley's gender or that the conduct was severe or pervasive enough to create a hostile work environment. Buckner's conduct, to qualify as actionable discrimination, must have occurred "because of" Riley's gender; the conduct is not "automatically discrimination because of sex merely because . . . [there is] sexual content." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998). And, even if Buckner's conduct was directed at Riley "because of" her gender, it must be sufficiently severe or pervasive from both a subjective and objective viewpoint. *See Conner v. Schrader-Bridgeport Int'l, Inc.*, 227 F.3d 179, 192 (4th Cir. 2000). In considering the severity or pervasiveness of conduct alleged to have created a hostile work environment, a number of circumstances are relevant, including: "(1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or a mere offensive utterance; (4) whether the conduct unreasonably interfered with the plaintiff's work performance; and (5) what psychological harm, if any, resulted." *Id.* at 193.

We acknowledge that the specific factual allegations contained in Riley's complaint are thin; however, we disagree with Buckner that the complaint contains, apart from the assertion of the "dictaphone" incident, only conclusory allegations. Riley also alleged that Buckner "constantly communicated to [Riley] with profanity and suggestive and sexually explicit language," and that Buckner created a "work environment and atmosphere saturated with sexual suggestion, innuendo, and proposition." The complaint also suggests that Buckner's conduct was directed at Riley and other female employees.

We are simply not convinced that Riley "cannot prove any set of facts in support of [her] claim entitling [her] to relief." *Edwards v.*

*City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). If the allegations are true, a reasonable fact finder could well conclude that Buckner's conduct (which Riley describes as "constant") occurred "because of" Riley's gender and that it was severe or pervasive. We are satisfied that such allegations, coupled with a specific example — the "dictaphone incident" — are sufficient, though barely, to state an equal protection claim under section 1983 that survives a motion to dismiss.

B.

Having concluded that Riley stated a claim that Buckner deprived her of a federal right, we turn briefly to consider whether Buckner is entitled to qualified immunity. To do so, we must decide whether, at the time of the claimed violation, the right at issue was clearly established and "whether a reasonable person in the official's position would have known that his conduct would violate that right," *Taylor*, 81 F.3d at 433. Citing *Beardsley* and a host of decisions from our sister circuits, Buckner concedes that at the time of his alleged conduct it was clear that sexual harassment via a hostile work environment generally violated equal protection principles under the Fourteenth Amendment. *See Beardsley*, 30 F.3d at 529. Buckner contends, however, that it was not clear at the time Riley worked for him that the *specific* conduct alleged in the complaint violated the Equal Protection Clause such that a reasonable judge in Buckner's position would have known his conduct was constitutionally impermissible. We disagree. The exact conduct at issue need not have been held to be unlawful in order for the law governing an official's actions to be clearly established, as long as the existing authority is such that the unlawfulness of the alleged conduct is manifest. *See Anderson v. Creighton*, 483 U.S. 635, 640 (1987). We believe that under *Beardsley*, which was issued prior to the relevant time frame in this case, it was clear that a state official could create a hostile work environment by "saturating" the office atmosphere with sexual suggestion and proposition and by constantly using sexually suggestive and explicit language in addressing only his female subordinates.

III.

In short, we conclude that qualified immunity is not appropriate at this early stage of the proceedings. Accordingly, we affirm the deci-

sion of the district court to permit Riley to go forward on her section 1983 claim against Buckner.

*AFFIRMED*