171 F.Supp.2d 585 (2001)
Robert Tilson MORLEY, Plaintiff,
v.
THE NORTH CAROLINA DEPARTMENT OF HEALTH AND HUMAN SERVICES/BROUGHTON HOSPITAL; H. David Bruton, M.D., Secretary; and Dr. Kevin Kilbride, M.D., Seth Hunt; Dr. Randall Lay, M.D., and Mike Orndoff, jointly and severally, and each in his official and individual capacity, Defendants.
No. CIV. 100CV250.
United States District Court, W.D. North Carolina, Asheville Division.
August 7, 2001.
*586 *587 Phyllis A. Palmieri, Morganton, NC, for plaintiff.
Dorothy Powers, NC Dept. of Justice, Raleigh, NC, Donna B. Wojcik, Morganton, NC, for defendants.

MEMORANDUM AND ORDER
THORNBURG, District Judge.
THIS MATTER is before the Court on the Plaintiff's timely filed objections to the Memorandum and Recommendation of United States Magistrate Judge Max O. Cogburn, Jr. Pursuant to standing orders of designation and 28 U.S.C. § 636, this Court referred Defendants' motion to dismiss to the Magistrate Judge for a recommendation as to disposition. Having conducted a de novo review of the Magistrate Judge's recommendation to which specific objections have been made, the Court grants in part and denies in part Defendants' motion.

I. STANDARD OF REVIEW
A motion to dismiss under Fed.R.Civ.P. 12(b)(6) "tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of North Carolina v. Martin, 980 F.2d 943, 952 (4th Cir.1993) (citations omitted). The motion "`should not be granted unless it appears to a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proved in support of his claim'." McNair v. Lend Lease Trucks, Inc., 95 F.3d 325, 328 (4th Cir.1996) (quoting Rogers v. Jefferson-Pilot Life Ins. Co., 883 F.2d 324, 325 (4th Cir.1989)). In considering the facts of the case for purposes of ruling on the Defendants' motion, the Court will view the pleadings and material presented in the light most favorable to the Plaintiff, as the nonmoving party, assuming all factual allegations to be true. See, e.g., Hishon v. King & Spalding, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir.1993).

*588 II. FACTUAL BACKGROUND
Plaintiff was employed as a Staff Psychologist II at Broughton Hospital in Morganton, North Carolina. Plaintiff's Second Amended Complaint, ¶¶ 19-20. In July, 1995, Plaintiff witnessed Staff Psychiatrist Randall Lay sexually harass Registered Nurse Annette Honea. Id. ¶¶ 21-24. Based on this event and Nurse Honea's report that other similar harassment had occurred since Dr. Lay had become her supervisor, Plaintiff informed Dr. Jerry Norton that Dr. Lay had sexually harassed Nurse Honea. Id. ¶ 24.
In August or September, Plaintiff reported said harassment to his immediate supervisor, Dr. Richard Weisler. Id. ¶ 50. Dr. Weisler took no action in response to the report of harassment because he was not Nurse Honea's supervisor. Id. In the following months, however, both Dr. Norton and Dr. Weisler subjected Plaintiff's work to heightened scrutiny, pointing out problems with his work that previously went unmentioned. Id. ¶¶ 52-54.
In December 1995, Plaintiff was involved in an incident concerning a patient being placed outside in cold weather. Id. ¶¶ 25-45. Dr. Lay originally ordered that the patient be placed outside in the cold, while Plaintiff undertook to have her calmed down and brought back into the Hospital. Id. ¶¶ 35-38, 42. As a result of this incident, on January 19, 1996, Michael Orndorff fired Plaintiff, and Clinical Director Kevin Kilbride discharged Nurse Honea from employment. Id. ¶¶ 23, 46. In contrast, Dr. Kilbride allowed Dr. Lay to resign, and a healthcare technician involved in the incident received only a warning. Id. ¶ 46.
Plaintiff appealed his dismissal to the Office of Administrative Hearings. Id. ¶ 55. Though Administrative Law Judge (ALJ) Beecher R. Gray declined to consider Plaintiff's assertion that his discharge constituted retaliation, finding that said assertion was untimely, Judge Gray nonetheless ordered Plaintiff reinstated. Id. ¶ 55; OAH Recommended Decision, attached to Motion to Dismiss and Memorandum in Support Thereof. Judge Gray ordered Plaintiff's reinstatement, back pay, and reasonable attorney's fees because he found that there was insufficient evidence to support the charge that Plaintiff violated Hospital policy. See Second Amended Complaint, ¶¶ 55-56. The State Personnel Commission affirmed Judge Gray's decision. Id. ¶ 57.
Concomitant with his internal administrative appeal, on April 1, 1996, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). See id. ¶ 13; Exhibit 1, EEOC Notice of Charge, dated April 1, 1996, attached to Second Amended Complaint. In his Notice of Charge of Discrimination informing his employer of the allegations, Plaintiff checked the box labeled "Title VII of the Civil Rights Act of 1964;" the form did not contain a box to check for charges of discrimination based on state law. See Exhibit 1, attached to Second Amended Complaint. Pursuant to a worksharing agreement between the State and the EEOC, the charge was deferred to the North Carolina Office of Administrative Hearings, Civil Rights Division ("OAH-CRD"). See id.; Exhibit 2, OAH-CRD Receipt of Charge, dated April 25, 1996, attached to Second Amended Complaint. When OAH-CRD received the charges from the EEOC, OAH-CRD notified Plaintiff that it would investigate the charge and make a determination of probable cause. See Exhibit 2.
Almost four years later, OAH-CRD notified Plaintiff that it had made a determination "as to the merits of the subject charge filed under Title VII of the Civil Rights Act of 1964, as amended and Chapter 7A-759 of the North Carolina General *589 Statutes." Exhibit 3, Notice of Determination, dated February 3, 2000, attached to Second Amended Complaint. OAH-CRD concluded that based on their investigation "there has been a Violation of Chapter 7A-759 of the North Carolina General Statutes concerning [Plaintiff's] claim of retaliation discrimination" and "that there is reasonable cause to believe that [Plaintiff] was discharged in violation of 704(a) of Title VII of the Civil Rights Act of 1964, as amended." Id. Having so concluded, OAH-CRD invited the parties to participate in conciliation efforts with the Office of Administrative Hearings. Id.
Conciliation efforts apparently failed, as Plaintiff was issued a "right to sue letter" and this suit followed. Plaintiff alleges five causes of action: violation of Title VII; violation of 42 U.S.C. § 1983; violation of the North Carolina Constitution; intentional infliction of emotional distress; and negligent infliction of emotional distress. Defendants move this Court to dismiss the action in its entirety.

III. DISCUSSION

A. Named Defendants:
In this case Plaintiff names Dr. Lay and Dr. Kilbride as parties defendant. However, Plaintiff wholly fails to allege that either of these individuals took any adverse action against him. Indeed, according to Plaintiff, Dr. Lay sexually harassed Nurse Honea (not Plaintiff) and was forced to resign by Dr. Kilbride following the cold weather patient care incident. See Second Amended Complaint, ¶¶ 21, 46. There is no allegation in the complaint that Dr. Lay played any role whatsoever in the firing of Plaintiff. See generally id. ¶¶ 20, 23. Similarly, while Dr. Kilbride allegedly fired Nurse Honea and forced Dr. Lay to resign, there is no allegation that Dr. Kilbride took any adverse action against Plaintiff. Compare id. ¶ 46 with id. ¶¶ 20, 23. Instead, Plaintiff alleges that Dr. Orndorff fired him. Id. ¶¶ 20, 23. As such, this Court is at a loss to identify any good reason for retaining Dr. Lay and Dr. Kilbride as parties defendant and will therefore dismiss them as parties to this litigation.

B. Title VII & "Proceedings Under State Law":
Defendants assert that the Court lacks jurisdiction over Plaintiff's Title VII claim inasmuch as Plaintiff failed to commence proceedings under state law before filing suit. Title VII provides that
[i]n the case of an alleged unlawful employment practice occurring in a State, or political subdivision of a State, which has a State or local law prohibiting the unlawful employment practice alleged and establishing or authorizing a State of local authority to grant or seek relief from such practice ... no charge may be filed ... by the person aggrieved before the expiration of sixty days after proceedings have been commenced under the State or local law unless proceedings have been earlier terminated.
42 U.S.C. § 2000e-5(c). It is undisputed that North Carolina state law prohibits retaliation for opposing sexual harassment, see N.C. Gen.Stat. § 126-17, and that an appropriate state agency, the OAH-CRD, has been established to process claims of retaliation. See id. § 7A-759. Therefore, section 2000e-5(c) requires that the OAH-CRD commence proceedings "under the State or local law" before Title VII's federal administrative process can begin. Davis v. North Carolina Dept. of Correction, 48 F.3d 134, 138 (4th Cir.1995).
Defendants argue that Davis mandates the dismissal of Plaintiff's action. The Court disagrees. As the Davis court explained, a plaintiff is not entitled to bring suit under Title VII unless the EEOC issues him a right to sue letter, *590 which the EEOC may do only after Plaintiff has first commenced proceedings under State or local law. Id. In order to satisfy Title VII's mandate that plaintiffs first resort to North Carolina law, plaintiffs must commence proceedings under state law through OAH-CRD. Id. at 138-39. It is not enough, as Defendants correctly note, that plaintiffs commence proceedings through OAH-CRD where those proceedings are commenced solely under federal law. Id.
In Davis the plaintiff steadfastly maintained that he had brought only a Title VII claim. Id. at 139, 141. Consistent with this assertion, the OAH investigated only a Title VII claim, "notwithstanding the conceded applicability of state discrimination laws." Id. The Davis court took pains to point out that
[t]he Notice of Determination issued by the director of OAH's Civil Rights Division confirms that the OAH was not investigating or processing any state law discrimination claim. The Notice concluded only "that there is reasonable cause to believe that Respondent has engaged in unlawful employment practice in violation of Title VII." ... The Report did not address the claim that [Plaintiff] had under North Carolina law, it made no findings with regard to discrimination under the state law, and it made no effort to remedy any found or potential violations of state law.
Id. at 138-39.
Here, although Plaintiff apparently did not raise a claim under state law before OAH-CRD, see Exhibit 1, attached to Second Amended Complaint, that omission is not fatal to his claim. Davis, 48 F.3d at 139 ("Indeed, although not essential, it appears that [Plaintiff] never even raised a claim under state law before the state agency."); Bolinsky v. Carter Machinery Co., Inc., 69 F.Supp.2d 842, 847-48 (W.D.Va.1999) ("The fact that the plaintiff did not explicitly refer to state law ... is not determinative."). Crucially, the OAH-CRD commenced proceedings under State law when it investigated Plaintiff's charges and determined that "there has been a Violation of Chapter 7A-759 of the North Carolina General Statutes concerning [Plaintiff's] claim of retaliation discrimination[.]" Exhibit 3, attached to Second Amended Complaint; compare Davis, 48 F.3d at 138. This fortuitous circumstance suffices to satisfy the requirement that proceedings be commenced under State law prior to bringing suit. Davis, 48 F.3d at 138-39; Puryear v. County of Roanoke, 214 F.3d 514, 519 (4th Cir.2000).

C. Title VII & Res Judicata:
Alternatively, Defendants argue that Plaintiff's Title VII claim is barred by principles of res judicata. See 28 U.S.C. § 1738. According to Defendants, this Court is required to give preclusive effect to the ALJ's determination that Plaintiff's retaliation claim was "untimely." The United States Supreme Court unequivocally rejected this argument in University of Tenn. v. Elliott, 478 U.S. 788, 796, 106 S.Ct. 3220, 92 L.Ed.2d 635 (1986), stating, "Congress did not intend unreviewed state administrative proceedings to have preclusive effect on Title VII claims." "Following Elliott, circuit courts have uniformly held that unreviewed administrative agency findings can never be afforded preclusive effect in a subsequent Title VII action." Rao v. County of Fairfax, 108 F.3d 42, 45 (4th Cir.1997) (citations omitted). Here, the ALJ's decision was never reviewed by a state court; therefore, it carries no preclusive effect in these proceedings. Id. at 45-46.

D. Title VII Individual Capacity Defendants:
In addition to Broughton Hospital, Plaintiff names Dr. H. David Bruton, Dr. *591 Kilbride, Dr. Lay, Seth Hunt, and Mike Orndoff, in their individual and official capacities, as Defendants to his Title VII claim. The liability of these individuals is premised upon Plaintiff's argument that they are liable as his supervisors or, more generally, as Broughton Hospital's agents, and thus come within Title VII's definition of "employer." Clearly established Circuit precedent forecloses this argument. The Fourth Circuit held in Lissau v. Southern Food Serv., Inc., 159 F.3d 177, 181 (4th Cir.1998), "that supervisors are not liable in their individual capacities for Title VII violations." As such, Plaintiff's Title VII claims against the above named individuals in their individual capacities must be dismissed. Id. at 178 ("Employees are not liable in their individual capacities for Title VII violations."), at 180 ("The 1991 amendments to Title VII further bolster our conclusion that individuals are not liable under that Act.").

E. Title VII Punitive Damages:
Plaintiff seeks to recover punitive damages from Defendants for the alleged Title VII violation.
A complaining party may recover punitive damages ... against a respondent (other than a government, government agency or political subdivision) if the complaining party demonstrates that the respondent engaged in a discriminatory practice ... with malice or with reckless indifference to the federally protected rights of an aggrieved individual.
42 U.S.C. § 1981a(b)(1) (emphasis added). Broughton Hospital is "state facility," see N.C. Gen.Stat. § 122C-181(a)(1)(d), and thus comes under the rubric of "government agency." As noted supra, the individual Defendants are all employees of Broughton Hospital, save Dr. Bruton who is named in his capacity as the Secretary of North Carolina Department of Health and Human Services. Lawsuits against government employees in their official capacities is "only another way of pleading an action against an entity of which an officer is an agent." Kentucky v. Graham, 473 U.S. 159, 165-66, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985) (quotation omitted). Thus, it is clear that pursuant to § 1981a(b)(1) Plaintiff may not recover punitive damages from the Defendants in this case. See, e.g., Oden v. Oktibbeha County, 246 F.3d 458, 465-66 (5th Cir. 2001), petition for cert. filed, ___ U.S.L.W. ___ (U.S. June 25, 2001) (No. 00-1927); Bryant v. Locklear, 947 F.Supp. 915 (E.D.N.C.1996).

F. Section 1983:
Plaintiff seeks to recover pursuant to 42 U.S.C. § 1983 for the alleged violation of his First Amendment rights.
To state a claim for retaliatory discharge under the First Amendment, a plaintiff must satisfy a three-part test. First, the employee must be speaking "as a citizen upon matters of public concern" and not "as an employee upon matters only of personal interest." Connick v. Myers, 461 U.S. 138, 147, 103 S.Ct. 1684, 75 L.Ed.2d 708[] (1983).... Second, the employee's interest in speaking upon the matter must out-weigh "the government's interest in the effective and efficient fulfillment of its responsibilities to the public." Connick, 461 U.S. at 150, 103 S.Ct. 1684 .... Finally, the employee's speech must have been a substantial factor in the employer's termination decision. Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471[] (1977).
Godon v. North Carolina Crime Control & Public Safety, 141 F.3d 1158 (table), 1998 WL 193109, *1 (4th Cir.1998) (internal citations omitted). Here, Plaintiff's complaint that he witnessed sexual harassment is clearly a matter of public concern which outweighs any governmental interest in efficiency. *592 See id. at *2. And Plaintiff alleges that this complaint was the cause of his discharge. Thus, he states a claim for retaliatory discharge under the First Amendment.
However, Plaintiff's claim is untimely.[1] The statute of limitations for § 1983 claims in North Carolina is three years. Brooks v. City of Winston-Salem, 85 F.3d 178, 181 (4th Cir.1996). Plaintiff's claims accrued when he knew or had reason to know of the injury that is the basis of the action. Wood v. Commonwealth of Virginia, 155 F.3d 564 (table), 1998 WL 414019, *2 (4th Cir.1998) (citing Cox v. Stanton, 529 F.2d 47, 50 (4th Cir.1975)). "Although the accrual date of a cause of action is a factual inquiry typically reserved for a jury, the district court may resolve that inquiry itself if the facts presented provide a clear basis for such a determination." Id. (citing Brown v. American Broadcasting Co., Inc., 704 F.2d 1296, 1304 (4th Cir.1983)).
Here, Plaintiff's claim accrued at the earliest on January 19, 1996, when he was fired, or at the latest on April 1, 1996, when he filed a charge of discrimination with the EEOC. In either case, the statute of limitations ran out in early 1999, while this action was not filed until November 2, 2000. Thus, Plaintiff's § 1983 claim is untimely and must be dismissed.

G. State Constitutional Claims:
Similarly, assuming arguendo that Plaintiff states a claim for a violation of the North Carolina Constitution, such claim is untimely. The statute of limitations for state law claims, including those arising from violations of the North Carolina Constitution, is three years. Staley v. Lingerfelt, 134 N.C.App. 294, 297, 517 S.E.2d 392, 395 (1999) (citations omitted); Harter v. Vernon, 139 N.C.App. 85, 88, 91, 532 S.E.2d 836, 838, 840 (2000). As noted supra, Plaintiff's claim accrued in January or April of 1996, while this action was not filed until November 2000. Thus, Plaintiff's state constitutional claims are untimely and must be dismissed.

H. Intentional & Negligent Infliction of Emotional Distress:
Plaintiff alleges that Defendants caused him severe emotional distress "in terminating plaintiff" "without just cause and in retaliation for his report of sexual harassment." Second Amended Complaint, ¶¶ 89-90, 96. Once again, assuming arguendo that Plaintiff states a claim upon which relief can be granted, his claims must be dismissed as untimely.
"Causes of action for emotional distress must be brought within three years from the date on which the action accrues." Zenobile v. McKecuen, 144 N.C.App. 104, 548 S.E.2d 756, 758-59 (2001) (citations omitted); Soderlund v. Kuch, 143 N.C.App. 361, 546 S.E.2d 632, 636-37 (2001) (citations omitted). "`[T]he three-year period of time for [emotional distress] claims does not begin to run (accrue) until the conduct of the defendant causes extreme [or severe] emotional distress.'" Soderlund, 546 S.E.2d at 637 (quoting Russell v. Adams, 125 N.C.App. 637, 641, 482 S.E.2d 30, 33 (1997)) (brackets *593 original) (internal quotations and citations omitted). Here, according to Plaintiff, his emotional distress, caused by his discharge, was extant no later than February 1996. Second Amended Complaint, ¶ 66(j) ("[Plaintiff] [s]uffered period of emotional paralysis, lasting 18 months, during which plaintiff, who was without the therapy and medication needed, seldom left his apartment, was unable to attend to his personal hygiene needs appropriately, and was unable to continue participation in activities in which he formerly took pleasure .... For example, in February of 1996, plaintiff was visited by former co-workers who observed that his Christmas tree remained in place since the holidays, and plaintiff had lost twenty pounds."). Thus, the statute of limitations expired no later than March 1, 1999, some 20 months before Plaintiff filed this action.
Plaintiff seeks to avoid dismissal by two means. First, he argues that the statute of limitations was tolled during the pendency of his claims with the EEOC. This argument is unconvincing, for Plaintiff could have asserted his emotional distress claims at any time during the pendency of his Title VII claims. See generally Johnson v. Railway Express Agency, Inc., 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975) (holding that the commencement of EEOC proceedings for a Title VII claim does not toll the statute of limitations for a cause of action under 42 U.S.C. § 1981). Emotional distress claims are entirely independent of Title VII claims, and do not require that plaintiffs exhaust administrative remedies before commencing suit. See generally id. at 465-66, 95 S.Ct. 1716. Title VII's exhaustion requirements simply do not speak to the tolling of state law emotional distress claims.
Second, Plaintiff now asserts for the first time (in response to the Magistrate Judge's Memorandum and Recommendation) that Defendants' conduct after his reinstatement caused him emotional distress, tolling the statute of limitations under a "continuing violation" theory. This attempted end-run around the four corners of his own complaint is untimely and entirely unsupported by his complaint, in which he alleges only that Defendants caused him emotional distress by firing him. Second Amended Complaint, ¶¶ 89-90, 96. Moreover, while the Fourth Circuit has not ruled on whether the accrual of such a claim may be "deferred by continuing developments in an employer's remediation response[,]" the court expressed its skepticism of such a theory, noting "[t]he uncertainties and opportunities for manipulation that would be created were the contention upheld[.]" Mikels v. City of Durham, 183 F.3d 323, 329 n. 3 (4th Cir.1999).
Indeed, the Seventh Circuit has expressly rejected Plaintiff's theory. Speer v. Rand McNally & Co., 123 F.3d 658, 663-64 (1997). That court explained:
That the resolution of [plaintiff's] internal complaint was different than [he] would have liked is not an independent and actionable wrong. [A]n employer's refusal to undo a discriminatory decision is not a fresh act of discrimination. An employee's pursuit of an internal grievance procedure does not affect the date on which his claim accrued.
Id. at 664 (internal quotations and citations omitted). This Court finds the Seventh Circuit's reasoning persuasive and, consistent with the skepticism expressed by the Fourth Circuit, will follow the Speer court's teaching.
Here, Plaintiff was fired on January 19, 1996, and suffered severe emotional distress as a result no later than February 1996. Thus, his cause of action accrued no later than the end of February, giving *594 Plaintiff until March 1, 1999, to seek redress in the courts for his injuries. Having waited until November 2, 2000, to bring this action, the statute of limitations bars recovery for the infliction (negligent or intentional) of emotional distress.

IV. ORDER
IT IS THEREFORE ORDERED that Plaintiff's claims against Dr. Lay and Dr. Kilbride are hereby DISMISSED WITH PREJUDICE;
IT IS FURTHER ORDERED that Defendants' Motion to Dismiss Plaintiff's Title VII claim against Defendant North Carolina Department of Health and Human Services, Defendant Broughton Hospital, and the individual Defendants in their official capacities is DENIED;
IT IS FURTHER ORDERED that Defendants' Motion to Dismiss Plaintiff's Title VII claim against the individual Defendants in their individual capacities is GRANTED;
IT IS FURTHER ORDERED that Defendants' Motion to Dismiss Plaintiff's claims for violations of 42 U.S.C. § 1983, the North Carolina Constitution, and for Intentional and Negligent Infliction of Emotional Distress is GRANTED and said claims are hereby DISMISSED WITH PREJUDICE.
IT IS FURTHER ORDERED that Defendants' Motion to Dismiss Plaintiff's request for punitive damages is GRANTED and said request is hereby DISMISSED WITH PREJUDICE.
NOTES
[1] "Untimely" means "too late." See, e.g., Morning v. Zapata Protein (USA), Inc., 128 F.3d 213, 216 (4th Cir.1997) (Batson challenge untimely when raised for the first time on appeal); Patterson v. Stewart, 251 F.3d 1243, 1244 (9th Cir.2001) (where district court "dismissed [] petition as untimely" because it was filed "one day too late," the applicable statutory tolling provision saved the petition and it "was timely"); United States v. Phillips, 225 F.3d 1198, 1201 (11th Cir.2000) ("Nor can we review the merits of the [sentence], because the notice of appeal from it was filed more than five years too late. We have to dismiss this appeal as untimely.").