Valerie S. ALSTON, Plaintiff,

v.

NORTH CAROLINA A & T STATE UNIVERSITY; Bernard Cotten, In his official and individual capacities; Donald Lindsay, In his official and individual capacities; and Richetta Slade, In her official and individual capacities, Defendants.

No. CIV. 103CV00819.

United States District Court, M.D. North Carolina.

Feb. 6, 2004.

David B. Puryear, Jr., Puryear and Lingle, P.L.L.C., Greensboro, NC, Robert S. Boyan, High Point, NC, for Plaintiff.

Joyce S. Rutledge, Raleigh, NC; and Celia Grasty Lata, N.C. Department of Justice, Raleigh, NC, Nancy Pulliam Quinn, The Quinn Law Firm, Greensboro, NC, for Defendants.

## MEMORANDUM OPINION

BULLOCK, District Judge.

Plaintiff Valerie Alston ("Alston") brings this sexual harassment suit against North Carolina A & T State University ("NC A & T") and three university employees, alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and Title IX of the Education Act Amendments of 1972, 20 U.S.C. § 1681 *et seq.* Alston also brings a claim pursuant to 42 U.S.C. § 1983 against Defendants Lindsay and Slade and pendent state law claims against NC A & T and Defendant Cotten. Defendants NC A & T, Lindsay, and Slade [1] moved to dismiss the complaint pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2) and 12(b)(6). For the following reasons, the motion to dismiss will be granted in part and denied in part.

## FACTS

From October 1998 to June 2002, Alston was employed as a campus police officer for NC A & T. Defendants Cotten, Lindsay, and Slade were supervisory officers within the NC A & T Campus Police Department. Alston alleges that during her tenure with NC A & T, Cotten repeatedly engaged in sexually harassing conduct toward her. Specifically, Alston asserts that Cotten solicited her to engage in sexual intercourse with him, intentionally exposed himself to her, and touched her inappropri-

ately without consent on multiple occasions. Alston also contends that Cotten made lewd and sexually discriminatory remarks to her or in her presence and implied that she must subject herself to his sexual advances to retain her job status. To support her contentions, Alston details one incident of harassment occurring on October 1, 2001, in which Cotten allegedly accosted Alston in the parking lot. According to the complaint, Cotten held Alston against her will, pulled the front of her shirt open to look inside, and remarked, "what do you have under there." (Compl.¶ 16.) Then, as Alston entered the police building and proceeded into the women's bathroom to change her clothes, Cotten allegedly followed her inside, placed his hand on the butt of the pistol he was wearing, and said, "Im going to watch you get dressed." (Compl.¶ 16.) Alston states that at this time, Cotten told Alston that she had been the subject of discussion at management meetings and that she needed to be more motivated about her job. As Cotten left the bathroom, he stated that he needed to leave before he was accused of attacking Alston. Alston avers that this incident caused her to fear for her physical safety.

Alston contends that in response to Cotten's harassing behavior, she has requested Cotten to stop, refused to acknowledge his remarks, avoided him when possible, and complained numerous times to her supervisors, including Lindsay and Slade. Alston states that Lindsay and Slade reacted to her complaints by interrogating her with questions such as "what did you do to make him think that you were interested in him" and "who are you dating in the department." (Compl.¶ 11.) Alston further asserts that despite her complaints, NC A & T did not take any disci-

---

**1.** Defendant Cotten has not joined the present motion to dismiss. Thus, "Defendants" in this opinion will refer only to NC A & T, Lindsay, and Slade.

plinary action against Cotten. Instead, Cotten "in all respects was permitted to continue to make sexual advances and otherwise create a sexually hostile working environment toward Plaintiff without consequence." (Compl.¶ 15.) Alston believes that other female police officers also have complained about Cotten's sexually harassing behavior. Finally, Alston avers that as a result of Cotten's unchecked harassment, she has experienced mental distress, humiliation, and depression. These conditions have resulted in Alston's hospitalization, ongoing psychiatric treatment, and separation from employment with NC A & T.

Alston filed her complaint in state court on July 31, 2003. Defendants NC A & T, Lindsay, and Slade timely removed the action to this court on August 29, 2003. Defendants now move to dismiss the complaint.

## DISCUSSION

### I. Standard of Review

Defendants have moved to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).[2] A motion to dismiss for failure to state a claim upon which relief may be granted made pursuant to Federal Rule of Civil Procedure 12(b)(6) should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). In considering a motion to dismiss, the court accepts as true all well-pleaded allegations and views the complaint in the light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir.1993). The function of a motion to dismiss for failure to state a claim is to test the legal sufficiency of the complaint and not the facts that support it. *Neitzke v. Williams*, 490 U.S. 319, 326–27, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), *overruled on other grounds by Davis v. Scherer*, 468 U.S. 183, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984). Similarly, when evaluating a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) on the grounds that the complaint fails to state facts upon which jurisdiction can be founded, "all the facts alleged in the complaint are assumed to be true and the plaintiff, in effect, is afforded the same procedural protection as he would receive under a Rule 12(b)(6) consideration." *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir.1982).

### II. Title VII Claim

Alston asserts a hostile work environment claim against NC A & T and Lindsay and Slade in their official capacities.[3] Sexual harassment that creates a

---

2. Defendants also have moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2). However, Defendants have not addressed this ground for dismissal in their brief. Consequently, the court will not consider the motion to dismiss on the basis of lack of personal jurisdiction. *See* Local R. of Civ. Practice of the U.S.D. Ct. M.D.N.C., LR7.3(b) (mandating that "[a]ll motions shall state with particularity the grounds therefor").

3. A suit against state officials in their official capacities is treated as a suit against the state. *See Kentucky v. Graham*, 473 U.S. 159, 165–66, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). NC A & T qualifies as a state agency. *See, e.g.*, N.C. Gen.Stat. §§ 150B–2(1a); 116–4; *Roberson v. Dale*, 464 F.Supp. 680, 689 (M.D.N.C.1979). Therefore, the claims against NC A & T as well as those against Lindsay and Slade in their official capacities will be addressed as claims against the state.

hostile work environment gives rise to a cause of action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"). *See Meritor Sav. Bank v. Vinson,* 477 U.S. 57, 66, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986). To state a claim for hostile work environment, a plaintiff must show: (1) that she was harassed "because of" her sex; (2) that the harassment was unwelcome; (3) that the harassment was sufficiently pervasive or severe as to create an abusive work environment; (4) that some basis exists for imputing liability to the employer. *Smith v. First Union Nat'l Bank,* 202 F.3d 234, 241 (4th Cir.2000).

■ Defendants challenge Alston's claims on two grounds. First, they contend that the conduct Alston alleges is not severe or pervasive enough to constitute a hostile work environment. To determine whether a hostile work environment claim meets the "severe and pervasive" requirement, the court considers the frequency of the harassing conduct, its severity, whether it is physically threatening or humiliating or merely offensive speech, and whether it unreasonably interferes with the employee's work performance. *See id.* at 242 (citing *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 23, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)). Defendants claim that Alston's complaint cannot meet these factors, citing multiple cases to support their assertions.[4] Defendants correctly note that the plaintiffs in the cases they cite could not satisfy the "severe and pervasive" element of their hostile work environment claims. However, nearly all of the cases Defendants cite were disposed of on grounds other than a motion to dismiss. To survive a motion to dismiss, the plaintiff need not provide all the facts surrounding her claims. *See Conley,* 355 U.S. at 47, 78 S.Ct. 99. Instead, she simply must allege a short and plain statement of the claim that contains enough facts for the court to infer each element of her cause of action. *See* Fed.R.Civ.P. 8(a)(2); *Wolman v. Tose,* 467 F.2d 29, 33 n. 5 (4th Cir.1972).

When viewed in light of these principles, Alston's allegations satisfy the "severe and pervasive" element of her hostile work environment claim. Alston contends that she was "subjected to and victimized by a longstanding and continuing course of sexually hostile and harassing, abusive and humiliating conduct by Defendant Cotten." (Compl.¶ 9.) This conduct included solicitation for sexual intercourse, inappropriate touching, the intentional exposure of Defendant Cotten's genitals, and the incident

4. *See, e.g., Hopkins v. Baltimore Gas & Elec. Co.,* 77 F.3d 745, 753–54 (4th Cir.1996) (affirming district court grant of summary judgment for defendant employer because incidents of bumping into plaintiff, giving plaintiff a congratulatory kiss, positioning a magnifying glass over plaintiff's crotch, and staring at plaintiff in the bathroom were not sufficiently severe or pervasive to establish a hostile work environment claim); *Dwyer v. Smith,* 867 F.2d 184, 188–89 (4th Cir.1989) (affirming grant of judgment for defendant after district court determined that pornographic material placed in plaintiff's mailbox and evidence that plaintiff's coworkers' engaged in sexually explicit conversations were not sufficient to show a hostile work environment). *See also Adusumilli v. City of Chicago,* 164 F.3d 353, 361 (7th Cir.1998) (affirming grant of summary judgment for defendant on hostile work environment claim because numerous instances of sexual innuendo and four touchings were not severe and pervasive enough to demonstrate sexual harassment); *Saxton v. AT & T,* 10 F.3d 526, 534–35 (7th Cir.1993) (affirming summary judgment for defendant because two incidents of harassment were not severe or pervasive); *Morgan v. Massachusetts Gen. Hosp.,* 901 F.2d 186, 193 (1st Cir. 1990) (affirming summary judgment for employer on sexual harassment claims involving a co-worker who bumped into plaintiff, peeped at him, and asked him to dance at a Christmas party, reasoning that this level of conduct was not sufficient to establish sexual harassment).

of harassment occurring on October 1, 2001. Alston further alleges that as a consequence of the harassment, she feared for her physical safety and suffered extreme emotional distress that ultimately resulted in her inability to work. Considered in the light most favorable to Alston, these statements support an inference of severe and pervasive harassment sufficient to constitute a hostile work environment. *See generally Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) (discussing liberal pleading standard applied to Title VII claims); *see also Riley v. Buckner*, 1 Fed.Appx. 130, 134, 2001 WL 15193, at *3 (4th Cir. 2001) (affirming denial of motion to dismiss plaintiff's sexually hostile work environment claim because "[w]e are satisfied that [general] allegations, coupled with a specific example ... are sufficient, though barely, to ... survive[ ] a motion to dismiss"); *Mandsager v. Univ. of North Carolina*, 269 F.Supp.2d 662, 673 (M.D.N.C.2003) (finding that allegations that professor often put his arm around plaintiff, signed correspondence "Love, William," and sexually propositioned her were sufficient to show severe and pervasive harassment for purposes of a motion to dismiss); *Barbier v. Durham County Bd. of Educ.*, 225 F.Supp.2d 617, 625 (M.D.N.C.2002) (concluding that multiple comments of a sexual nature and claims that defendant grabbed plaintiff, held her against him, and kissed her satisfied the severe and pervasive requirements of plaintiff's sexual harassment claim to survive motion to dismiss); *Con-*

ner v. R.H. Barringer Distrib. Co.*, 152 F.Supp.2d 856, 860 (M.D.N.C.2001) (reasoning that general allegations of harassment and detailed statements about two harassing remarks and one physical encounter met the severe and pervasive element of plaintiff's sexual harassment claim under the 12(b)(6) standard). *Cf. Bass v. E.I. Dupont De Nemours & Co.*, 324 F.3d 761, 765 (4th Cir.2003), *cert. denied*, —— U.S. ——, 124 S.Ct. 301, 157 L.Ed.2d 253 (2003) (affirming dismissal of sexually hostile work environment claim which alleged only that plaintiff had disputes with managers and other employees about her work).

■■■ Second, Defendants maintain that Alston has not shown a basis for attributing Cotten's misconduct to NC A & T. Under the framework established by *Faragher v. City of Boca Raton*, 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998), and *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998), "[a]n employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee." *Faragher*, 524 U.S. at 807, 118 S.Ct. 2275; *Ellerth*, 524 U.S. at 756, 118 S.Ct. 2257. In this case, Alston alleges that Cotten, one of her supervisors, created the hostile work environment she experienced. These allegations are sufficient to meet the fourth element of Alston's claim for hostile work environment.[5]

---

5. In its brief, NC A & T attempts to assert an affirmative defense to Alston's claims of sexual harassment. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 807, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998), and *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998). The court will not consider Defendants' challenge at this time. A motion to dismiss tests only the legal adequacy of the complaint, not the merits of an affirmative defense. *Richmond, Freder-*

icksburg & Potomac R.R. Co. v. Forst*, 4 F.3d 244, 250 (4th Cir.1993). An affirmative defense may be raised under Federal Rule of Civil Procedure 12(b)(6) only if the defense appears on the face of the complaint. *See id.* Defendants' affirmative defense is not present on the face of Alston's complaint. Consequently, the defense should be reserved for consideration in a motion for summary judgment. *See id.*

### III. Title IX Claim

Alston also brings a claim for sexual harassment pursuant to Title IX of the Education Act Amendments of 1972, 20 U.S.C. § 1681 *et seq.* ("Title IX"). Defendants have cited no basis upon which to dismiss this cause of action. Consequently, the motion to dismiss Alston's Title IX claim will be denied. *See* Local R. of Civ. Practice of the U.S.D. Ct. M.D.N.C., LR7.3(b) (mandating that "[a]ll motions shall state with particularity the grounds therefor").

### IV. Section 1983 Claims against Lindsay and Slade

▇▇▇▇ Alston maintains that Lindsay and Slade are individually liable for deprivation of her civil rights in violation of 42 U.S.C. § 1983. An individual is subject to liability under Section 1983 if the "official charged acted personally in the deprivation of the plaintiff's rights." *Wright v. Collins,* 766 F.2d 841, 850 (4th Cir.1985). An actionable deprivation may occur through the defendant's affirmative misconduct or, if the defendant is a supervisor, through the defendant's tacit approval of the constitutionally infringing conduct of a subordinate. *See Randall v. Prince George's County, Md.,* 302 F.3d 188, 202 (4th Cir.2002); *Slakan v. Porter,* 737 F.2d 368, 372 (4th Cir.1984). In this case, because Lindsay and Slade did not personally participate in the alleged harassment, their liability is premised on their supervisory roles. *See Randall,* 302 F.3d at 202;

*Velasco v. Fairall,* 134 F.3d 365, 1998 WL 45448, at \*2 (4th Cir.1998).

▇▇▇▇▇ To state a claim for supervisory liability under Section 1983, a plaintiff must demonstrate that: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices;" (3) there was an "affirmative causal link" between the supervisor's inaction and the constitutional injury the plaintiff suffered. *Shaw v. Stroud,* 13 F.3d 791, 799 (4th Cir.1994). A plaintiff may demonstrate a "pervasive and unreasonable risk" under the first prong of the analysis by showing that the conduct at issue is "widespread, or at least has been used on several different occasions." *Id.* A plaintiff may demonstrate "deliberate indifference" by showing the supervisor's "continued inaction in the face of documented widespread abuses." *Slakan,* 737 F.2d at 373.

Alston's pleading, though thin on detail, is adequate to state a claim for supervisory liability under the lenient 12(b)(6) standard. Alston contends that she repeatedly complained about Cotten's harassment to supervisors including Lindsay and Slade. These allegations support the inference that Lindsay and Slade knew Cotten was engaging in ongoing behavior that created an unreasonable risk of constitutional harm.[6] Alston further pleads that, despite

---

6. Defendants claim that because Alston has failed to plead dates or specific facts about incidents prior to October 1, 2001, Alston cannot show that Lindsay and Slade had notice of the alleged harassment. However, to survive a motion to dismiss, Alston is not required to set out every fact she ultimately must prove to sustain her claim. *See Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Alston states that she repeatedly complained about the harassment, which she characterizes as "a long-standing

and continuing course of sexually hostile and harassing, abusive and humiliating conduct" including solicitations for sexual intercourse, exposure of sex organs, unwanted touchings, and repeated verbal harassment. (Compl.¶ 9.) If these allegations are taken as true, as they must be at this stage of the litigation, they are sufficient to withstand a motion to dismiss. Whether Alston can prove the substance of her claims is a question

her complaints, Lindsay and Slade failed to take any remedial action against Cotten and instead interrogated Alston about what she may have done to cause the harassment. Finally, Alston's complaint demonstrates that the alleged harassment did not cease after she complained to her supervisors. Alston specifically alleges that the October 1, 2001, incident of harassment occurred "following Plaintiff's prior complaints." (Compl.¶ 16.) Taken in the light most favorable to Alston, the complaint states a claim for supervisory liability against Lindsay and Slade. *See Mandsager,* 269 F.Supp.2d at 678–79 (finding that plaintiff stated a claim for supervisory liability under Section 1983 by alleging numerous complaints to superiors, no action in response to those complaints, and continued harassment after the complaints); *Jennings v. Univ. of North Carolina,* 240 F.Supp.2d 492, 503 (M.D.N.C. 2002) (concluding that plaintiff had pled elements of Section 1983 supervisory liability claim when she claimed she made multiple complaints, supervisors failed to intervene, and unconstitutional conduct continued).

## V. Pendent State Claims against NC A & T

■ In addition to her federal claims for sexual harassment, Alston brings claims against Cotten for battery, assault, intentional infliction of emotional distress, and negligent infliction of emotional distress. Alston contends that NC A & T is vicariously liable for these torts and is directly responsible for negligently supervising and retaining Cotten. Asserting that the Eleventh Amendment bars both

types of claims, NC A & T moves to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1).[7]

■ The Eleventh Amendment to the United States Constitution limits the jurisdiction of the federal courts to hear cases against states and state employees acting in their official capacities. *Kitchen v. Upshaw,* 286 F.3d 179, 183–84 (4th Cir. 2002). NC A & T qualifies as a state institution. *See* N.C. Gen.Stat. §§ 150B–2(1a); 116–4; *Roberson v. Dale,* 464 F.Supp. 680, 689 (M.D.N.C.1979). As such, it generally enjoys the protection of Eleventh Amendment immunity from liabilities that must be paid from public funds. *Quern v. Jordan,* 440 U.S. 332, 337, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979); *Huang v. Bd. of Governors of Univ. of North Carolina,* 902 F.2d 1134, 1138 (4th Cir.1990) ("[T]he Eleventh Amendment bars a suit by private parties to recover money damages from the state or its alter egos acting in their official capacities."). A state may "directly and affirmatively waive its Eleventh Amendment immunity in a state statute or constitutional provision, as long as the provision explicitly 'specif[ies] the State's intention to subject itself to suit in federal court.'" *Booth v. Maryland,* 112 F.3d 139, 145 (4th Cir.1997) (quoting *Atascadero State Hosp. v. Scanlon,* 473 U.S. 234, 241, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1985) (brackets in original)). Under *Lapides v. Board of Regents of the University System of Georgia,* 535 U.S. 613, 122 S.Ct. 1640, 152 L.Ed.2d 806 (2002), a state also may waive its immunity against state law claims in specific circumstances by removing a case to federal court. Alston

appropriately determined at summary judgment.

**7.** The Fourth Circuit has not conclusively established whether a dismissal based on Eleventh Amendment immunity is a dismissal for lack of subject matter jurisdiction under Rule

12(b)(1) or for failure to state a claim under Rule 12(b)(6). *See Andrews v. Daw,* 201 F.3d 521, 525 n. 2 (4th Cir.2000) (citing cases supporting each alternative). As Defendants have framed their motion as one for lack of subject matter jurisdiction, the court will treat it as such.

believes that *Lapides* applies to waive NC A & T's immunity in this instance.

In *Lapides,* plaintiff sued the state of Georgia in state court, where Georgia had waived its sovereign immunity for state law claims. Georgia removed the case to federal court and attempted to invoke the Eleventh Amendment to bar plaintiff's claims. The United States Supreme Court held that Georgia's removing the case to federal court waived its Eleventh Amendment immunity against the plaintiff's state law claims. However, the Court expressly declined to address whether a state that had retained its sovereign immunity in state court waived immunity by removing to federal court. *Id.* at 617–18, 122 S.Ct. 1640. Instead, the Court confined its holding to "the context of state-law claims, in respect to which the State has explicitly waived immunity from state-court proceedings." *Id.* Thus, *Lapides* operates to preclude Eleventh Amendment immunity in this case if North Carolina has waived immunity from Alston's state law claims in its own courts.

The State Tort Claims Act, N.C. Gen. Stat. § 143–291, effects a limited waiver of State sovereign immunity for negligent acts committed by state employees in their official capacities. *See* N.C. Gen.Stat. § 143–291; *Teachy v. Coble Dairies, Inc.,* 306 N.C. 324, 329, 293 S.E.2d 182, 185 (1982). However, the Act mandates that plaintiffs who wish to sue the state for tortious acts must bring their claims before the North Carolina Industrial Commission, not the district court. *See id.* at 329, 293 S.E.2d at 185; *Kawai Am. Corp. v. Univ. of North Carolina,* 152 N.C.App. 163, 166, 567 S.E.2d 215, 217 (2002). Under this scheme, North Carolina has not "explicitly waived immunity from state court proceedings" with regard to torts by state employees. *Lapides,* 535 U.S. at 617, 122 S.Ct. 1640; *Dai v. Univ. of North Carolina,* 2003 WL 22113444, at *6

(M.D.N.C. Sept. 2, 2003) (reasoning in context of tort claim against State that *"Lapides* does not apply here because the State of North Carolina has not waived its sovereign immunity from suit in its own courts on tort claims, but, rather, requires administrative exhaustion before recourse to the courts can be sought"). Similarly, the North Carolina Court of Appeals has specifically ruled that sovereign immunity protects the North Carolina university system from claims of negligent retention and supervision. *See Wood v. North Carolina State Univ.,* 147 N.C.App. 336, 339, 556 S.E.2d 38, 40 (2001); *Herring v. Winston–Salem/Forsyth County Bd. of Educ.,* 137 N.C.App. 680, 684, 529 S.E.2d 458, 462 (2000). Thus, because North Carolina has not expressly waived its sovereign immunity in state court against Alston's claims, the *Lapides* decision does not compel a finding that NC A & T has waived its immunity through removal to federal court. *See Lapides,* 535 U.S. at 617, 122 S.Ct. 1640.

■ Alston also contends that NC A & T has waived its immunity by purchasing liability insurance. Under North Carolina law, counties and municipalities may waive their immunity through the purchase of insurance. *See* N.C. Gen.Stat. § 153A–435(a) ("Purchase of insurance pursuant to this subsection waives the county's governmental immunity, to the extent of insurance coverage, for any act or omission occurring in the exercise of a governmental function."). However, in *Wood v. North Carolina State University,* 147 N.C.App. 336, 556 S.E.2d 38 (2001), the North Carolina Court of Appeals considered whether a state institution that obtained liability insurance waived its sovereign immunity against plaintiff's tort claims. The court declined to find a waiver, stating, "we are not persuaded that there is a 'plain, unmistakable mandate' from the General Assembly to waive im-

munity in these circumstances." *Wood*, 147 N.C.App. at 339, 556 S.E.2d at 40 (quoting *Orange County v. Heath*, 282 N.C. 292, 296, 192 S.E.2d 308, 310 (1972)); *see also Cottom v. Town of Seven Devils*, 2000 WL 1808990, at *8–9 (W.D.N.C. Aug.1, 2000) (rejecting plaintiff's argument that the State waived its immunity by purchasing liability insurance). Accordingly, because North Carolina has retained sovereign immunity against Alston's state law claims, Defendants' motion to dismiss these claims will be granted.

VI. Punitive Damage Claim

 Alston seeks punitive damages to remedy the alleged sexual harassment she experienced. However, Alston cannot recover punitive damages from NC A & T or its officers in their official capacities for violations of Title VII. *See* 42 U.S.C. § 1981a(b)(1) ("A complaining party may recover punitive damages under this section against a respondent (other than a government, government agency or political subdivision) if the complaining party demonstrates that the respondent engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual."); *see also Morley v. North Carolina Dep't of Health & Human Servs.*, 171 F.Supp.2d 585, 591 (W.D.N.C.2001) (refusing to allow recovery of punitive damages in Title VII case against state hospital and its employees in their official capacities); *Bryant v. Locklear*, 947 F.Supp. 915, 916 (E.D.N.C. 1996) (dismissing Title VII punitive damage claim against North Carolina State University and its officers pursuant to 42 U.S.C. § 1981a(b)(1)). In addition, the Fourth Circuit has held that punitive damages are not an available remedy under Title IX. *See Mercer v. Duke Univ.*, 50 Fed.Appx. 643, 645, 2002 WL 31528244 (4th Cir.2002) (per curiam). Therefore, Alston's claims for punitive damages for the alleged violations of Title VII and Title IX will be dismissed.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss will be granted as to the state law claims against NC A & T. Defendants' motion to dismiss also will be granted as to the punitive damage claims against NC A & T and Lindsay and Slade in their official capacities for the alleged Title VII and Title IX violations. Defendants' motion to dismiss will be denied as to the Title VII and Title IX claims against NC A & T and Lindsay and Slade in their official capacities as well as to the Section 1983 claims against Lindsay and Slade in their individual capacities. All claims against Defendant Cotten also remain.

An order in accordance with this memorandum opinion shall be entered contemporaneously herewith.

## *ORDER*

For the reasons set forth in the memorandum opinion filed contemporaneously herewith,

IT IS ORDERED that Defendants' motion to dismiss [Doc. # 9] is **GRANTED** as to the state law claims against NC A & T. Defendants' motion to dismiss also is **GRANTED** as to the punitive damage claims against NC A & T and Lindsay and Slade in their official capacities for the alleged Title VII and Title IX violations. Defendants' motion to dismiss is **DENIED** as to the Title VII and Title IX claims against NC A & T and Lindsay and Slade in their official capacities as well as to the Section 1983 claims against Lindsay and Slade in their individual capacities. All claims against Defendant Cotten also remain.